PEARL J. HENDRICK, Administratrix of the Estate of WILLIAM C. HENDRICK, Deceased, v. JAMES M. KURN and JOHN G. LONSDALE, Trustees of ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellants.—No. 38442.—179 S. W. (2d) 717.

Division Two, March 6, 1944.

Rehearing Denied, May 2, 1944.

*M. G. Roberts, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellants.

*B. Sherman Landau* for respondent.

BARRETT, C.—In this action to recover $10,000.00 for the death of William C. Hendrick the jury returned a verdict in favor of the railroad. The trial court was of the view that two instructions given at the request of the railroad were erroneous and granted the plaintiff a new trial. On this appeal the railroad contends that in any event its demurrer should have been sustained because the plaintiff failed to prove an instance of discoverable peril within the meaning of our humanitarian doctrine.

Hendrick was twenty-nine years old, single and employed by a steel company. He lived with the Harris family, in Webster Groves, at the corner of Swan and Hazel Avenues. The Harris home and Swan Avenue were south of and next to the railroad right of way. Through Webster Groves, east and west, there are two main line railroad tracks. On Saturday evening, August 17, 1940, about 9:30 Hendrick left the Harris home to attend a carnival at "Old Orchard," north of the tracks and about a twenty minute walk from the Harris home. He was in Midgeley's restaurant, a short distance from the carnival ground, and drank a bottle of beer with a friend. His brother saw him on the carnival grounds about 12:15. He returned to Midgeley's, drank another bottle of beer, and stayed there until closing time, about 1:15. At that time he appeared to be sleepy but he was not intoxicated and seemed to be in good humor and good health. He left Midgeley's saying that he was going home and that he would see them the next day. He was not seen again until he was found unconscious, about 6:10 that morning, between the rails of the

eastbound track. His right leg had been amputated above the knee and was lying outside the north rail. He died two days later. The only train over that track between the time Hendrick left Midgeley's and the time he was found was at 3:50 A. M. It cannot be questioned but that he was run over by that train and the plaintiff contends under such circumstances that the train crew, had they been keeping a lookout, should have discovered him, helpless, and in a position of imminent peril in time to have stopped the train and avoided running over him.

No one saw the train run over Hendrick and he was not seen on the track by anyone until he was found there at 6:10, two hours and twenty minutes after the train had passed. The engineer and fireman were at their posts, looking ahead, as the train passed Hazel Avenue but they did not see anyone and did not know that the train had run over a man until late Sunday afternoon. But despite the absence of eyewitnesses the plaintiff contends that by circumstantial evidence she has proved an instance of discoverable imminent peril. We take the circumstances relied upon from the plaintiff's brief and argument.

When the train struck Hendrick it was traveling at a speed of about thirty-five miles an hour and could have been stopped, according to the plaintiff's evidence, within the distance of 450 to 500 feet. The track was almost level and straight for a long distance. The engine was equipped with a 1500 candle power headlight and its rays projected 1700 to 1800 feet. Hendrick was wearing a white shirt and light gray trousers. In answer to a hypothetical question, which assumed that a man was lying between the rails and dressed as Hendrick was dressed, the plaintiff's witness Kaveney testified that the man could have been seen from the engine for a distance of one thousand feet, even with the piles of chat along the tracks as they were. Without detailing other testimony of the fact the jury could have found from the plaintiff's evidence, had there been a man standing, sitting or lying on the track, that he would have been discoverable. We assume also, solely for the purposes of this opinion, that there was such general use of the track by the public that the railroad was not entitled to expect a clear track and was, therefore, under a duty to look and see that which was discoverable.

But even with these assumptions we are of the view that the plaintiff has failed to make a prima facie case because she has failed to prove by sufficiently substantive, probative evidence one of the essential facts necessary and prerequisite to liability under the humanitarian doctrine. She has failed to prove that Hendrick was in *imminent peril*, "one of the basic facts of liability; it might be denominated the chief one." Banks v. Morris & Company, 302 Mo. 254, 267, 257 S. W. 482; State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798. In our humanitarian doctrine *imminent peril* means

certain, immediate and impending peril. Huckleberry v. Missouri Pacific R. Co., 324 Mo. 1025, 26 S. W. (2d) 980. "A person is in imminent peril when he is in or about to enter the danger zone." Elkin v. St. Louis Public Serv. Co., 335 Mo. 951, 956, 74 S. W. (2d) 600. But the "defendant's liability under the humanitarian rule depends upon whether plaintiff's injuries were caused by negligent acts of defendant after he saw or should have seen plaintiff in a position of peril." Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065. Unquestionably the plaintiff may prove a case, including imminent peril, under the humanitarian doctrine by circumstantial evidence (Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31) and she is entitled to have all the posssible inferences from the evidence drawn in her favor. But a humanitarian case cannot be submitted on evidence which leaves one of the essentials, such as imminent peril, to guesswork, conjecture, speculation or mere surmise. Swain v. Anders & Newingham, 235 Mo. App. 125, 140 S. W. (2d) 730; Bauer v. Wood (Mo. App.), 154 S. W. (2d) 356. The burden of proof is upon the plaintiff (Gardner v. Turk, 343 Mo. 899, 123 S. W. (2d) 158) to offer evidence tending to show or from which the jury could reasonably infer that the railroad was negligent after Hendrick was in a position of imminent peril as "the defendant owes no duty of any kind to the plaintiff until the latter's peril arises." Krause v. Pitcairn, 350 Mo. 339, 359, 167 S. W. (2d) 74; Bates v. Brown Shoe Co., supra.

The plaintiff is well aware of these undisputed fundamentals but says that her evidence is such that the jury could justly and reasonably draw the inference and find the conclusion that Hendrick was in imminent peril long before the train passed Hazel Avenue at 3:50 and, therefore, the railroad breached its duty to see him and avoid running over him. The plaintiff contends that her evidence proves that "the deceased stumbled and fell across the north rail of the track long before the passage of the freight train" or as she puts it at another place in her argument that he stumbled "over the outer edge of the recently elevated railroad tie" and fell across the track. The plaintiff's theory is that Hendrick stumbled and as he fell his chin struck some sharp object, the edge of a tie, and that as a result of the blow on the chin he became unconscious and laid upon the track for a long period of time. During the trial of the case the plaintiff appears to have taken the position that Hendrick left Midgeley's and walked directly towards the track and that he fell and became unconscious about 1:30 and remained so until the train passed at 3:50. The established facts from which the plaintiff would have the inference drawn are that his right shoe, from the amputated leg, "had a scuff mark at the toe. His body was sprawled face downward, with his head southwest of his right leg, in the direction toward the Harris residence, his amputated right leg was at the north (or

852

outer) side of the north rail of the eastbound tracks. There was flesh and blood on the rail where his leg had been amputated, and his right hip was against the south (or inner) side of the north rail. His head was lying across the edge of one of the raised railroad ties; across his chin was a deep laceration such as one would receive in falling against a sharp edge of a railroad tie. Cigarettes, which he had been carrying in his left shirt pocket, were scattered to the southwest of his body'' between the rails and the ties. It could be added that the railroad had removed the chat from around the ties preparatory to putting in new chat ballast, so the rails and ties were about six inches above the ground. As to Hendrick's injuries, other than the amputated right leg and the cut on his chin the plaintiff's evidence also shows that there were lacerations on his scalp, he had a fractured skull, there was a laceration and abrasion of the left knee and leg and ''multiple abrasions and small lacerations of body and extremities.''

It would serve no useful purpose to point out the other and different possibilities and inferences which could be drawn from these circumstances, that is other than that he stumbled, fell and became unconscious from a blow on his chin; such as that all his injuries could easily have been caused by being run over by the train. Assuming that a jury could reasonably draw the inference from the fact of the scuffed shoe and the blow on the chin that Hendrick had stumbled and fallen and even that the blow on the chin rendered him unconscious, yet the plaintiff's case must fail for lack of evidence that he was in imminent peril. Where is the fact or circumstance from which a jury could reasonably infer *when* and *at what time* Hendrick stumbled and fell on the track? It was incumbent on the plaintiff to prove not only that the railroad was under a duty to maintain a lookout and discover persons on the track but it was also incumbent on the plaintiff to prove ''that the deceased was in a position of imminent peril, as that term is understood under our humanitarian doctrine.'' Bates v. Brown Shoe Co., supra.

The plaintiff's insurmountable difficulty is aptly illustrated by the cases upon which she relies. It is of no significance that there were no eyewitnesses or that the accident occurred at 3:50 in the morning providing and if there are facts or circumstances from which the jury could draw the inference and find that Hendrick was in *imminent peril.* For example, in Starks v. Lusk, 194 Mo. App. 250, 187 S. W. 586 (affirmed in 280 Mo. 268, 216 S. W. 1119) a man was run over by a backing train while he was on a trestle. It was daylight. The train was traveling slowly and could have been stopped in a very short distance. There were no eyewitnesses to the fatality but, as the court pointed out, proof of when and how he was in peril was supplied by the facts of the occurrence:

"This was an open trestle with nothing whatever to prevent the seeing of a man, or any object, at a considerable distance whether he was walking, standing, sitting or lying down. What is more important here is that deceased was necessarily in peril from the time the train entered on that trestle until it struck him, whether he was walking, standing, sitting or lying down and regardless of what part of the trestle he was on. *He could have come onto the trestle nowhere but at the north end and, wherever he was between those points, and whatever doing, he was in peril.* He was killed about 280 feet from where he entered into the place of peril and while the train was going that distance, at least, the deceased was seeable and was in a position of danger whatever he was doing or wherever he was. . . . The conductor says that the deceased was not on the trestle when he stepped off the caboose as it entered thereon, because if he had been he could and would have seen him. The trouble with this is that he was there, for how else could he get to the place where the train struck him?"

Thus a set of circumstances is presented from which the time and place or the when and how of the deceased's imminent peril is inevitably made to appear. Distinguishing Hamilton v. Kansas City So. Ry. Co., 250 Mo. 714, 157 S. W. 622 and Whitesides v. C., B. & Q. R. Co., 186 Mo. App. 608, 172 S. W. 467, Judge Sturgis said:

"In those cases the difficulty lay in the fact that all that was proved was that *deceased was*, at the time he was injured, *in the position of peril but there was nothing to prove how long he had been in that position.* Although the place where he was ▮ injured was visible for a sufficient distance to allow a stop to be made or other precautions taken, *yet there was no proof that the deceased was in that place, and therefore seeable there, long enough before the actual injury to have been seen by one looking at such place.*"

So it was in Allen v. C., R. I. & P. Ry. Co., 227 Mo. App. 468, 54 S. W. (2d) 787, there was an established chain of events from which the *imminent peril* of a child, two years old, was inevitably made to appear. She was on a porch a short distance from the tracks fifteen minutes before the train passed. A man saw the child with her hands on the rail, stooped over, and getting herself over the rail. The last time he saw her she was standing in the track. He walked 625 feet and the train passed. The child's sister saw her on the track just as the train struck her. In Whiteaker v. Missouri Pac. R. Co. (Mo. App.), 28 S. W. (2d) 680 a drunk man sat down on a pile of mine props next a switch track. He was seen there before dark and the physical facts demonstrated that he was dragged from the props at eight o'clock that night. Any time a train came along as he sat there he was in imminent peril.

In the instant case there is but a single circumstance pointing to Hendrick's being in imminent peril and that is the fact that he was

run over by the train. Undoubtedly that fact shows that he was in peril some time but there is no evidence "positive or inferential, that the deceased was upon the track, lying, standing or sitting for a time prior to the injury sufficiently long for actual or constructive sight by persons in charge of the train and when it was at a distance sufficiently great to permit it to be stopped before striking him." Hamilton v. Kansas City So. Ry. Co., supra; Whitesides v. C., B. & Q. Ry. Co., supra; Justus v. St. Louis-San Francisco Ry. Co., (Mo. App.), 224 S. W. 79.

Hendrick was struck by the train and so he was on, near or getting on the tracks at that time, 3:50. He was last seen at 1:15 as he left Midgeley's. He said he was going home and he was headed in the direction of the tracks twenty minutes away, but there is no evidence as to when he got there—it could have been exactly two hours and thirty-five minutes from 1:15 or exactly two hours and twenty minutes after 1:30. As was said in Baecker v. Missouri Pac. Ry. Co., 240 Mo. 507, 517, 520-521, 144 S. W. 803, 806-807:

"In a hypothetical question a man is put on the track 'at the crossing or near that point' and the witness is asked how far away he could be seen by anyone in the 'cab of the engine.' On objection made to that question as not within the issues and that there was no testimony decedent was at or near the crossing when struck, counsel stated, 'We can supply that.' . . . Now, we look in vain in the record for that evidence. . . . Clearly he was in danger at the instant he was struck by the cross-beam of the engine. So much the sequel shows. *But to recover he must be shown to have been within the danger zone long enough and far enough to give defendant an opportunity, a last clear chance, to save his life. This is so, even if defendant's servants were bound, as they were, to look out for him and are chargeable with seeing all that ordinary care in looking would discover.*"

The plaintiff's case falls within both the facts and the principles of the Hamilton, Baecker, and Justus cases rather than the facts and principles of the Starks, Allen and Whiteaker cases. There is not a single established fact or circumstance from which the jury could draw the inference and find that Hendrick was in fact on or near the tracks at a time or when he should have been seen in time thereafter for the train crew to have stopped the train, as the plaintiff's evidence shows they could have stopped. There was a total failure to prove one of the basic essentials requisite to liability under the humanitarian doctrine,—to wit, that the deceased was in imminent peril.

It necessarily follows that the railroad's demurrer at the close of all the evidence should have been sustained. The order of the trial court sustaining plaintiff's motion for a new trial is reversed and the

cause remanded with directions to reinstate the verdict and enter judgment for the defendant. *Westhues, C.,* concurs; *Bohling, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.