LEONORA SHELTON, a Minor, by ARCHIE E. SHELTON, Next Friend, v. GUY A. THOMPSON, Trustee in Bankruptcy of MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Debtor, Appellant.—No. 39176.—185 S. W. (2d) 777.

Division One, February 5, 1945.

Rehearing Denied, March 5, 1945.

*Watts & Gentry* for appellant; *Thomas J. Cole* of counsel.

*Joseph N. Hassett* and *Vernon L. Turner* for respondent.

HYDE, J.—This is an action for personal injuries from being struck by a train at night at a public street crossing. The case was submitted on both primary and humanitarian negligence. Plaintiff had a verdict for $10,000.00 and defendant has appealed from the judgment entered.

The primary negligence submitted was high, dangerous and negligent rate of speed (common law negligence) and on violation of a city speed ordinance. Defendant contends that plaintiff failed to make a case for the jury. It says plaintiff's testimony is so fantastic, unreasonable and contrary to physical facts that it does not amount to substantial evidence; that plaintiff was guilty of contributory negligence as a matter of law; and that the application of the humanitarian rule is left to speculation and conjecture.

Plaintiff was injured at the intersection of defendant's tracks with Koeln Avenue, an east and west street, in St. Louis. Defendant's tracks ran approximately north and south at this intersection, crossing Koeln Avenue at a slight angle. North of this crossing defendant's tracks curved to the east and then to the west in an S curve around bluffs and a depression. This deadened the sound of an approaching train. It also prevented persons on the crossing from seeing a train approaching from the north until it was less than 900 feet away. There were three tracks at the crossing; the train that struck plaintiff was southbound on the middle track. Because of the curves, the headlight of an engine would not shine upon the crossing until it was within about 200 feet; the point at which the first curve begins being 184 feet from the crossing. (Defendant's evidence was that it would never shine directly on the middle track at the crossing and also that the light was focused 800 feet in front of the engine.) There were two city street lights at the crossing, one at the northeast corner and one at the southwest corner. The crossing was protected by an automatic signal designed to commence operating whenever a train approached within about 1400 feet.

Plaintiff testified that she was hurrying west on Koeln Avenue about 11:00 P. M. to reach a group of young people who had crossed defendant's tracks ahead of her. As she approached the crossing, on the north sidewalk, she heard the signal bell ringing and saw the automatic lights flashing. She stopped and in a short time the signals ceased. She looked both ways, but saw or heard nothing, and started across the tracks.

Plaintiff further testified: "As I started to go on across the flashing signal started in again. It startled me and I started running and stumbled and fell very hard on my chest and stomach, knocked the breath out of me. . . . I started after I had gotten my breath to get up on my hands and knees, then I saw the train coming down the track. I should say it was about an ordinary city block away from me, about 300 feet. I then started crawling just as fast as I could and kept crawling towards the west off of the tracks." The train ran over her right foot and ankle. She estimated "it was going between 30 and 35 miles an hour." (Defendant's fireman estimated the speed at between 20 and 30 miles per hour.) Plaintiff said that she fell "on the sidewalk where it crosses the track"; that she "stayed

right on the crossing"; and that she "didn't get off and crawl around off the sidewalk at any time."

Plaintiff, after her injury, hopped and crawled west where she was found by another girl who went for help to a tavern one block west of the crossing. The wife of the tavern owner said that upon hearing cries for help she looked from her second story window and could see plaintiff lying in the street at a distance which the evidence tends to show was about 250 feet. She said that she could see from the light of the street lights that there was a human being lying in the street. Police officers who were called took plaintiff to the hospital and some of them made an investigation of the scene of the accident. They traced drops of blood to a point 11 feet north of the crossing where they found blood marks and small particles of flesh on the west rail of the middle track. This condition was also observed by defendant's employees the next day. The police officers also found plaintiff's right shoe at this point.

Defendant's fireman was in a position where he could not see the crossing as the train approached it. The engineer had died prior to the trial. Defendant's evidence was that after the brakes took effect they would stop the train in 239 feet at 25 miles per hour, in 343 feet at 30 miles per hour and in 465 feet at 35 miles per hour; but that to these distances must be added the distance the train would travel in three additional seconds (1½ seconds reaction time and 1½ seconds for the brakes to take effect after the engineer acted) making the total stopping distances after discovery at 25 miles per hour 349 feet, at 30 miles per hour 475 feet, and at 35 miles per hour 617 feet.

Our view is that plaintiff made a humanitarian case at least upon the issue of failure to slacken speed. Plaintiff had evidence that at 35 miles per hour "the shortest distance in which it could be stopped with safety to the equipment on the train and the passengers would be 250 feet; at 30 miles an hour it would be about 255 feet; at 25 miles an hour about 200 feet." This took no account of reaction time (shown by defendant's evidence); and we must take judicial notice that there is some time required for an engineer to react to the appearance of danger and to use the means of applying the brakes. [See Krause v. Pitcairn, 350 Mo. 339, 353, 167 S. W. (2d) 74, 80; Stark v. Berger, 344 Mo. 170, 125 S. W. (2d) 870, 872; McGowan v. Wells, 324 Mo. 652, 666, 24 S. W. (2d) 633, 639.] Plaintiff's evidence, however, showed that "assuming that the brakes are applied when a train is traveling 30 miles an hour . . . the end of the first 100 feet I suppose it would be reduced down to 15 or 20 miles an hour, something like that." Therefore, since plaintiff so nearly escaped and would have required (under her evidence) only the slightest additional interval of time to have removed her right foot from danger, we must hold that the jury could reasonably have

found that her injury could have been avoided if the action of the brakes had effectively commenced more than 100 feet from the crossing. [See Gann v. C., R. I. & P. R. Co., 319 Mo. 214, 6 S. W. (2d) 39, 43; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864, 867; Smith v. Thompson, 346 Mo. 502, 142 S. W. (2d) 70, 75.] Defendant, however, contends that the engineer could not have discovered plaintiff lying or crawling on the crossing at night. Defendant argues that the testimony and pictures demonstrate how the engine headlight (because of the curved track) would shine only on parts of the crossing other than the middle track where plaintiff was. Defendant also argues that it would be impossible for the engineer to recognize plaintiff as a human being in that position and at that hour. Nevertheless, the wife of the tavern owner said that she could recognize plaintiff as a human being (lying still in the street) by the street lights alone. She did not know plaintiff was there when she looked from her window and so we think that her evidence is stronger than the experiments discussed in Voorhees v. Chicago, R. I. & P. R. Co., 325 Mo. 835, 30 S. W. (2d) 22 and Cochran v. Thompson, 347 Mo. 649, 148 S. W. (2d) 532, cited by defendant, and is substantial evidence on this issue. We, therefore, hold that plaintiff made a jury case under the humanitarian rule on the issue of slackening speed.

However, on the issue of discovering plaintiff in peril in time thereafter to have stopped the train before reaching the crossing, we think the matter is left wholly to speculation and conjecture. Plaintiff's evidence put the stopping distance at from 200 to 250 feet without taking into account reaction time, and without considering any time for the brakes to take effect after the engineer acted, which plaintiff's expert admitted would take at least some fraction of a second. The train must have been within that distance when plaintiff started to crawl because otherwise she would have had time (four or five seconds or more) to get off the track. Because of the curved track which would prevent the headlight from shining directly on the crossing at such distances and also the shifting angle of the engineer's view beyond these distances due to the curves (which is evident from the physical facts) our conclusion is that there is no substantial evidence to show that the engineer could have discovered plaintiff (lying down) more than 250 feet from the crossing. [See Hendrick v. Kurn, 352 Mo. 848, 179 S. W. (2d) 717 and cases cited.] We, therefore, hold that it was erroneous and prejudicial to submit this issue.

We further hold that plaintiff did make a case for the jury on common law negligence of excessive speed. It was shown that this was a much traveled street and crossing. It also was shown that defendant had a marker limiting speed to 20 miles per hour. (Defendant had some evidence that this applied to the curves and not to

the crossing but the jury could reasonably have found otherwise.)
Since plaintiff's evidence showed that she could have escaped injury,
if given the slightest additional interval of time to withdraw her
right foot from the rail, we think the jury could have reasonably
found that a difference of ten miles per hour in speed (from 30 or
35 to 20 miles per hour) would have prevented the casualty. [See
Toeneboehn v. St. Louis-S. F. R. Co., 317 Mo. 1096, 298 S. W. 795;
Herrell v. St. Louis-S. F. R. Co., 322 Mo. 551, 18 S. W. (2d) 481;
Williams v. St. Louis Public Service Co., 335 Mo. 335, 73 S. W. (2d)
199; Hoelzel v. Chicago, R. I. & P. R. Co., 337 Mo. 61, 85 S. W. (2d)
126.] Upon full consideration of the evidence, we cannot say that
plaintiff's testimony is impossible or contrary to physical facts or
laws. [See Parrent v. Mobile & Ohio R. Co., 334 Mo. 1202, 70 S. W.
(2d) 1068; Hardin v. Illinois Central R. Co., 334 Mo. 1169, 70
S. W. (2d) 1075.] Neither can we hold plaintiff guilty of contributory
negligence as a matter of law either in going on the track (when the
signals ceased) or in not trying to get on her feet (instead of crawling)
since she was acting in an emergency upon seeing the headlight of
the approaching train. [Clason v. Lenz, 332 Mo. 1113, 61 S. W. (2d)
727; Menard v. Goltra, 328 Mo. 368, 40 S. W. (2d) 1053.] We,
therefore, hold that it was proper to submit this ground of primary
negligence.

However, we must sustain defendant's assignment of
error of giving plaintiff's Instruction No. 2 submitting the case on a
violation of a city ordinance. This instruction directed the jury to
find for plaintiff (upon finding such violation was the proximate
cause of her injury) if they found "that an ordinance of the City
of St. Louis was in effect limiting the rate of speed of defendant's
train to six miles an hour while passing over the crossing of Koeln
Avenue, and that the train which injured plaintiff was traveling at
a rate of speed in excess of six miles an hour." The only ordinance
in evidence was as follows: "It shall not be lawful within the limits
of the city for any person, association or corporation to run any
engine, car or train of cars propelled by steam power at a rate of
speed exceeding six miles per hour over, along or across any crossing
or intersection, improved street, avenue or road, which is now or may
hereafter be used for wagon travel, if such person, association or
corporation shall have failed to comply with a notice from the director
of streets and sewers specified in section 2207; but, after compliance
therewith, it shall be lawful for any person, association or corporation
to run its engines, car or train of cars at a rate of speed not exceeding
20 miles per hour."

There is no evidence whatever to show that any notice applicable
to this crossing was given or, if given, that there was any failure
to comply with it. No other ordinance was offered in evidence. It
was shown that this was and had long been a protected crossing,

formerly by gates and a watchman and very recently (with approval of the Public Service Commission) by automatic bell and flashing signals. It was conceded that the train was going much faster than 6 miles per hour so that this instruction practically amounted to a directed verdict. We must hold that this instruction was without support of evidence and was erroneous and prejudicial.

Defendant further complains of the refusal of its Instruction A, as follows: "If the jury believe and find from the evidence that the plaintiff attempted to cross the defendant's track at a point approximately ten or eleven feet north of the sidewalk crossing on Koeln Avenue, and while doing so fell and was injured by defendant's train, then plaintiff is not entitled to recover, and your verdict must be in favor of the defendant."

While defendant had substantial circumstantial evidence that plaintiff was injured at this point instead of on the sidewalk, we hold that this instruction was properly refused. There was no evidence that plaintiff fell at this point or attempted to cross the track there or to show how or why she got there, if she did. Moreover it was so near the crossing, and one of the crossing lights, that plaintiff might well have been seen there as plainly as she could have been on the same track on the sidewalk. However, the instruction does not inform the jury as to the applicable law in that situation, but reads as though there would be no liability under any circumstances if she were injured at that point.

The judgment is reversed and the cause remanded. All concur.