Connie Mae DAVIS, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, Appellant.

No. 46309.

Supreme Court of Missouri,

Division No. 2.

Sept. 8, 1958.

Motion for Rehearing or to Transfer to
Court En Banc Denied Oct. 13, 1958.

Lester F. Stephens, St. Louis, for appellant.

Charles J. Malloy, St. Louis, for respondent.

BOHLING, Commissioner.

Mrs. Connie Mae Davis sued the St. Louis Public Service Company, a corporation, for personal injuries sustained when struck by a bus of the defendant. She prayed $15,000 damages. There was a nine-juror verdict for the defendant. Plaintiff's motion for a new trial was sustained on grounds of alleged improper conduct by defendant's attorney. Defendant has appealed and contends no prejudicial error was committed and that plaintiff failed to make a submissible case against defendant.

Plaintiff charged defendant with various acts of primary negligence and also negligence under the humanitarian doctrine. Defendant denied plaintiff's charges of negligence and pleaded contributory negligence as a defense.

Plaintiff's trial theory, as submitted in her verdict directing instruction was "that plaintiff was crossing upon Lindell Boulevard at the time and place shown to you in the evidence" and "that at said time and place she was in a position of imminent peril of being struck by the defendant's motorbus * * *;" and that defendant was negligent under the humanitarian doctrine in not preventing said motorbus striking and injuring plaintiff "by stopping the same." This was the sole issue of negligence on which plaintiff went to the jury.

Defendant's motion for a directed verdict at the close of all the evidence, stating reasons, was overruled.

 If plaintiff failed to make a case on the submitted charge of negligence plaintiff was not prejudiced by the alleged trial errors and the motion for new trial should have been overruled. Smith v. St. Louis Public Serv. Co., 364 Mo. 104, 259 S.W.2d 692, 694 [2, 3]; Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 828 [3].

Plaintiff was struck by defendant's bus at the intersection of Newstead avenue and Lindell boulevard in the city of St. Louis, about 4:30 p. m. May 28, 1956. Newstead is a north-south street, 36 feet wide. Lindell is an east-west street, 60 feet wide, with six traffic lanes marked by white lines. The first line is 10 feet south of the north curb of Lindell.

Plaintiff had no physical disability. She was employed as a chore woman at a nursing home. She was walking, at a normal gait, south in the cross-walk, marked by brass knobs, on Lindell about 4 feet west of the west curb, if extended, of Newstead. It was raining, a "misty rain." She was holding a newspaper above her head, but it was not down over her eyes in any way. She described the occurrence on direct examination as follows: "A. Well, I approached Lindell about five or six feet, and I looked across Lindell at the light and the light was green, and I walked, walked on and just hesitated just about a second, just long enough to see where I was stepping, and I walked on out

in Lindell about seven or eight feet, and I heard a sound, I heard a horn, and just as I heard a horn, it hit, all the same time." She said the portion of the bus striking her was just a little to the right of the center.

On cross-examination plaintiff, among other things, stated: She was 6 feet north of Lindell when she saw the traffic light was green. She had not been watching the traffic light, did not look at it a second time and did not know whether it was green when she stepped off the curb. She did not look to her right or to her left as she stepped into the street. She stepped into the street, continued to walk at a normal gait and was about 8 feet south of the north curb of Lindell when the bus struck her left side and knocked her over. Plaintiff admitted she stated in her deposition that she was about 3 or 4 feet out into the street when the bus struck her, but at the trial stated she was confused at the time her deposition was taken. She does not know how many steps she took, "Q. You do not know where the bus was that struck you as you left the north curb of Lindell? A. No, sir. Q. You never saw that bus at any time? A. No, sir. Q. You didn't even look to the east or to see what traffic was coming, am I right about that? A. Yes, sir." After the collision she was lying with her head about 2 or 3 feet from the curb and her body north and south.

Roy Schmid, the bus operator, was plaintiff's witness. He testified that the bus attained a speed of "5 or 6 miles an hour" as it crossed the intersection and he could stop the bus in "about ten feet" although in his deposition he stated he was going 4–5 m. p. h. when plaintiff stepped off the curb and he could stop the bus in 6 to 8 feet; that he was not taking into consideration reaction time when he gave his deposition or when he stated he could stop in 10 feet; that his reaction time would be almost a second; that, including reaction time, he could stop the bus at 5 or 6 m. p. h. in "15 or 16 feet" that particular day.

The operator of the bus stopped at the northeast corner of the intersection to discharge and take on passengers. At that time the traffic signal on the northwest corner was red for westbound traffic. The bus was well loaded, with quite a few passengers standing in its aisle. As the bus proceeded across the street "all of a sudden there was an application of the brakes of the bus"; and the bus came to a stop with its front end west of the west curb of Newstead. Plaintiff did not establish where the bus was when she stepped off the curb, or when its brakes were applied, or its exact location when it stopped.

Defendant offered two witnesses, passengers on the bus. They testified that when the traffic light showed green for westbound traffic the bus proceeded to cross Newstead in the curb or north lane of Lindell; that southbound automobiles on Newstead had stopped at the intersection; that the bus was about 7 feet wide; that its speed was 5 m. p. h.; that its brakes were applied east of the west curb of Newstead; that it stopped very suddenly, with its right side 2 or 3 feet south of the north curb of Lindell, its front door even with or just a little west of the sewer lid at the northwest corner, and that plaintiff was in a sitting position with her back against the curb right outside the front door of the bus and between the bus and the curb.

The testimony of the only witness who stated he saw plaintiff step off the curb and undertook to place the bus at that time, plaintiff's witness Charles Ray, was so self-contradictory (he also stated he last saw plaintiff 4 feet north of the curb, stopped momentarily, and did not see her step off the curb) and contrary to the physical facts relied upon by plaintiff to make her case that plaintiff does not refer to it in her presentation. Ducoulombier v. Thompson, 343 Mo. 991, 124 S.W.2d 1105, 1110 [5–7]; Adelsberger v.

Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647 [6, 7]; Foerstel v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 792, 798 [6].

■ Plaintiff states she is entitled to the benefit of all evidence favorable to her, and every favorable and reasonable inference warranted by the evidence. She cites Stout v. St. Louis County Transit Co., Mo. App., 285 S.W.2d 1, 4 [3]; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280 [1]. This does not mean a mere scintilla of evidence but means substantial evidence and the reasonable inferences therefrom. Grange v. Chicago & E. I. R. Co., 334 Mo. 1040, 69 S.W.2d 955, 961 [6]; Wallingford v. Terminal R. R. Ass'n, 337 Mo. 1147, 88 S.W.2d 361, 366 [6]; Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 848 [5, 6]. Where the evidence tends to support several inconsistent factual inferences, some of which result in a failure of proof of defendant's actionable negligence, the factual issue or issues essential to a plaintiff's case are not established by legitimate proof. In such instances sound reason does not point to defendant's liability to the exclusion of other causes, and a verdict based on such evidence cannot stand. Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33 [2–4]; State ex rel. v. Shelton, 249 Mo. 660, 156 S.W. 955, 965 [2]; State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 116 S.W.2d 99, 102; Hendrick v. Kurn, 352 Mo. 848, 179 S.W.2d 717, 719; Stephens v. Thompson, Mo., 293 S.W.2d 392, 394 [1, 7–9]; Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74, 79; Pietraschke v. Pollnow, Mo.App., 147 S.W. 2d 167, 170 [3–5], citing cases; Helton v. Huckeba, 241 Mo.App. 786, 270 S.W.2d 486, 493 [9].

■ Plaintiff and defendant present plaintiff's humanitarian case on the theory plaintiff entered a position of imminent peril when she stepped off the curb onto Lindell boulevard. The humanitarian doctrine is not applicable while a plaintiff is merely approaching a position of imminent peril. Defendant's duty does not arise "before the plaintiff is actually in a position of imminent peril"; and no duty is owed "to an oblivious plaintiff who is not in a position of imminent peril." Hilton v. Terminal R. Ass'n, 345 Mo. 987, 137 S.W. 2d 520, 522 [4, 5]; Brown v. Kurn, Mo., 161 S.W.2d 421, 423 [4]; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 465 [6] and cases cited. A humanitarian case which leaves one or more of the essential elements to guesswork, speculation or conjecture is not for the jury. Hendrick v. Kurn, supra, 179 S.W.2d loc. cit. 719 [6].

■ Plaintiff had the burden of proving a submissible humanitarian case on defendant's failure to stop. Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 901 [23, 24].

■ A constitutive factual element of a claim under the humanitarian rule is that defendant, after he knew or should have known plaintiff was in imminent peril, had the present ability with the means at hand to have averted the impending injury without injury to himself or others. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 [2].

Plaintiff, to fill the gaps in her proof as to her walking speed and where defendant's bus was when she stepped off the curb, relies on cases taking judicial notice that the ordinary walking speed of the average man is 2 or 3 miles per hour, or 2.9 to 4.4 feet per second. Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440, 443. Defendant would take 4 m. p. h., relying on Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788. She states that at a speed of 2 m. p. h. it took her 2⅔ seconds to walk the 8 feet from the curb to where she was struck; and that the bus, traveling 6 m. p. h. or 8.8 feet a second (plaintiff's theory at the trial and here as the most favorable speed for plaintiff), was 24.7 feet from the point of impact when she stepped off the

curb and could have been stopped in 15 feet. She also states that walking 3 m. p. h. it took her 1⅘ seconds to walk the 8 feet and in that time the bus traveled 15.7 feet and could have been stopped in 15 feet. Plaintiff, we think, would unduly extend the humanitarian doctrine. Her brief, in effect, concedes and her testimony established she did not have a last clear chance case.

■ In view of the variances and differences in the estimates of speed, time and distances involved in plaintiff's calculations, she, having the burden of proof, is not entitled to the most favorable estimates if she is to remove her case from the realm of guesswork, speculation or conjecture. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 976 [8]; Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 322; Stephens v. Thompson, Mo., 293 S.W.2d 392, 394 [1]. For instance, how can a jury find that the speed of a vehicle is 6 m. p. h. instead of 5 m. p. h. without guesswork when the only evidence on the issue comes from a witness for the party having the burden who states its speed was "5 or 6 m. p. h." and a speed of 5 m. p. h. fails to make a case?

■■ No testimony established the position of the bus when plaintiff stepped off the curb. The only witness on stopping distance was plaintiff's witness, the bus operator. He was not cross-examined by defendant's counsel. He stated that at a speed of 5 or 6 m. p. h. he could stop the bus in 15 or 16 feet on that day, including reaction time. We have said we must take judicial notice that some time is required for the mind and muscular system to react to the appearance of danger, and three-quarters of a second is recognized unless a longer time affirmatively appears. Shelton v. Thompson, 353 Mo. 964, 185 S.W.2d 777, 778 [2]; West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, 54 [8]. Traveling 6 m. p. h. the bus traveled 6.6 feet in three-fourths of a second. Thereafter, the bus did not continue at 6 m. p. h.,

but during the 9.4 feet remaining it was coming to a stopped position. If one take 3 m. p. h. as its mean speed, it would take the bus more than two additional seconds to stop. If one take the speed of the bus at 5 m. p. h., or the operator's reaction time at one second, plaintiff's case is not aided. We conclude that plaintiff's evidence, failing to show where the bus was when she stepped off the curb, failed to remove the operator's ability to stop under the humanitarian doctrine from the realm of speculation. Consult Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 787; West v. St. Louis-S. F. R. Co., Mo., supra, 295 S.W.2d loc. cit. 55; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 976 [5–8]; McKinney v. Robbins, Mo. App., 273 S.W.2d 513, 517 [6, 7].

The cases stressed by plaintiff involved children crossing a street. In Bunch v. Mueller, supra, 284 S.W.2d loc. cit. 443, 444, there was evidence which placed the positions of the plaintiff and the defendant and established defendant's ability to stop under the humanitarian doctrine. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, loc. cit. 634, 635, was submitted on humanitarian negligence in failing to slacken speed, swerve or warn, and there was testimony that defendant was 20 feet or more than 20 feet from plaintiff, and, driving at 10 m. p. h., defendant could have avoided striking plaintiff under the submitted negligence. In Williams v. Ricklemann, Mo., 292 S.W.2d 276, 279, 281, the submitted humanitarian negligence was failure to slacken speed or swerve. Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 936, 938, was submitted on humanitarian negligence in failing to slacken speed, swerve, or warn. The foregoing are illustrative of plaintiff's cited cases. In all but Bunch v. Mueller the child was running across the street. We think they are not determinative of the instant case.

The order granting a new trial is reversed and the cause remanded with direc-

tions to reinstate the verdict of the jury and to enter judgment thereon for defendant.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.