**Roy W. ROSS, Plaintiff-Appellant,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Respondent.**

No. 30363.

St. Louis Court of Appeals.

Missouri.

May 17, 1960.

E. A. O'Rourke, St. Louis, for appellant.

Frank B. Green, St. Louis, for respondent.

DOERNER, Commissioner.

This is an action for damages resulting from a collision between plaintiff's automobile and one of defendant's buses. At the close of plaintiff's case the trial court sustained defendant's motion for a directed verdict, and after an unavailing motion for a new trial plaintiff appealed.

Plaintiff's petition alleged primary negligence as well as negligence under the humanitarian rule in failing to stop, slacken the speed, swerve the bus, or sound a warning of its approach. However, the only assignment made by plaintiff in his appeal is that the court erred in sustaining defendant's motion for a directed verdict "* * * for the reason that plaintiff's evidence was sufficient to submit this case to the jury under defendant's humanitarian failure to stop after plaintiff was in a position of imminent peril of being struck by defendant's bus." Since that is the only question raised on appeal, plaintiff is deemed to have abandoned all other claims of negligence. Heuer v. Ulmer, Mo., 273 S.W.2d 169.

Plaintiff testified that the collision occurred on June 18, 1955, about 11:30 p. m., at the intersection of Coleman and North Market Streets in the City of St. Louis. Both streets are approximately 36 feet wide, and intersect at a right angle, Coleman running north-south, and North Market east-west. Plaintiff, accompanied by three friends, had attended a ball game at Busch Stadium and was on his way home. He testified that he turned his automobile onto Coleman Avenue two or three blocks north of North Market, and proceeded southwardly on Coleman at a speed of 20 miles per hour. A stop sign for southbound traffic on Coleman was located on the northwest corner of the intersection. Plaintiff stated that he brought his car to a stop with the front bumper five feet north of the north curb line of North Market, and looked to both his right and left, but saw no traffic approaching. The motor of his automobile died, and he started it

up, again looked west and east on North Market, saw no vehicles on that street, and proceeded southwardly into the intersection. His testimony was that from where he had stopped he could see 300 feet to the west on North Market, and that after he started up and drove into the intersection he did not again look to his right or left. When the front of his car was five feet north of the south curb line of North Market it was struck broadside on the right by defendant's bus, which was traveling eastwardly on North Market. Plaintiff related that when his car was "* * * some feet back * * *" from the point of the impact, "* * * but it wasn't very far * * *," one of the passengers in his car exclaimed; that he looked to his right and saw the front of the bus about ten feet away. On direct examination, when asked for his opinion as to its speed, plaintiff stated that the bus was going "* * * about thirty-five—forty miles an hour." His own car had reached a speed of five miles per hour at the time of the collision.

On cross-examination plaintiff agreed that if the bus was traveling 40 miles per hour at the time he first saw it, it was moving a distance of 60 feet per second; and that since it was then only 10 feet away, he saw it for only about one-sixth of a second before the collision occurred. The interrogation then continued:

"Q. Just one-sixth of a second. You can hardly designate that time, can you? A. Well, I—a glance is sufficient for you to see something, even though you—your eye don't register what it is, you can still see it.

"Q. You could make it out as a bus? A. Yes.

"Q. Now, this bus, the front end of it was about all you could see of it at that time; is that right? A. That's right.

"Q. And you could tell from looking at it at the front end how fast it was going? A. I could guess at it.

"Q. Well, I am not asking you to guess. You testified your best estimate? A. Yes.

"Q. Now, there is a difference between your best estimate and to guess. These are your best estimates, are they, or are they your guesses? We want to know. A. Well, that's still an estimate on my part. I don't know what it was doing.

"Q. Well, is this a guess that the bus was going forty miles an hour? A. Yes, it is a guess."

The operator of the bus, Sylvester Woolfolk, called as a witness by the plaintiff, testified on direct examination that, on the night in question, with the number of passengers then aboard, and with safety to the bus and those in it, the vehicle could have been stopped within a distance of 52 feet, including reaction time, had it been traveling at 35 miles per hour; and that at a speed of 40 miles per hour it could have been stopped in 60 feet, including reaction time. On cross-examination he testified that prior to the collision his bus was traveling eastwardly on North Market Street at a speed of 20 to 25 miles per hour; that when it reached a point 50 feet from the intersection he reduced his speed by taking his foot off of the accelerator and putting it on the brake pedal, without exerting any pressure; that he first saw plaintiff's car when the bus was at the west curb line, plaintiff's automobile then being 50 feet north of the north curb line, and traveling at a speed of 45 miles per hour or better; that plaintiff's car did not stop for the stop sign, but its speed was increased and plaintiff swerved to his left and attempted to pass in front of the bus; and that the right front of plaintiff's car struck the left front side of the bus.

The only other evidence presented in plaintiff's case was the testimony of plain-

tiff's treating physician, which was not included in the transcript.

■ Among other constituent elements which it was necessary for plaintiff to prove, in order to make a submissible case under the humanitarian rule, was that when the operator of defendant's bus saw, or should have seen, the plaintiff in a position of imminent peril the operator had the ability to have avoided the impending injury to plaintiff by stopping the bus without injury to the passengers, himself, or the bus. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Davis v. McClanahan, Mo. App., 262 S.W.2d 65. Hence, the question here presented is whether there was substantial evidence from which the jury, without speculation and conjecture, could have found that the bus operator could have avoided the collision by stopping the bus after he saw, or should have seen, the plaintiff in a position of imminent peril.

Plaintiff argues that he made a submissible case because the jury could have found that he was in a position of imminent peril at least when he crossed the center line of North Market Street; that he was then 13 feet from the point of impact and at an average speed of 2½ miles per hour it would take him 3.4 seconds to traverse that distance; that in 3.4 seconds, traveling at 35 miles per hour, the bus would cover a distance of 178.5 and at 40 miles per hour a distance of 204 feet; and that according to Woolfolk, the operator, at those speeds the bus could have been stopped in a distance of 52 feet or 60 feet, respectively. Alternatively, plaintiff argues that when his automobile reached the center line it had traveled two-thirds of the distance to the point of impact; that it might be contended that it had then reached only two-thirds of its ultimate maximum speed of five miles an hour, so that it was then traveling at 3.3 miles per hour; and that calculating the time plaintiff's car would require at that speed to reach the point of impact, and the distance the bus would travel at the alternate speeds of

35 or 40 miles per hour during such required time, the bus operator still had 136.5 feet or 156 feet within which to stop the bus, when only 52 or 60 feet were necessary.

It is readily apparent that both of plaintiff's lines of argument are predicated on his assumption that the bus was traveling at a speed of either 35 or 40 miles per hour as it proceeded eastwardly on North Market. But the difficulty with plaintiff's position is that there was no substantial evidence as to the speed of the bus. As the quoted part of plaintiff's testimony shows, plaintiff's statement regarding the speed of the bus was not an estimate but only a guess. Not only did plaintiff describe it as such, but he testified that " * * * I don't know what it (the bus) was doing." Plaintiff's inability to do any more than guess at the speed of the bus is understandable in the light of his testimony that the bus was only 10 feet away when he first saw it, and that all he could see was the front end of the vehicle.

■ Plaintiff and Woolfolk were the only two witnesses who testified on the issue of liability. Woolfolk's testimony did not aid plaintiff on that question, nor does plaintiff so contend in his brief. It is clear from plaintiff's own testimony that he was only guessing as to the speed of the bus, and a guess is not substantial evidence. O'Neil Implement Mfg. Co. v. Gordon, Mo. App., 269 S.W. 636, 640; Hunter v. Helsley, 98 Mo.App. 616, 621, 73 S.W. 719. Plaintiff's evidence failed to show where the bus was when he entered a position of imminent peril, and left the operator's ability to stop in the realm of speculation and conjecture. A humanitarian case which leaves one or more of the essential elements to guesswork, speculation or conjecture, is not for the jury, Davis v. St. Louis Public Service Company, Mo., 316 S.W.2d 494, 497; Hendrick v. Kurn, 352 Mo. 848, 179 S.W.2d 717, 719, and the trial court correctly ruled on defendant's motion for a directed verdict.

It is therefore the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.