Eugene Lester WOODS (Plaintiff), Respondent,

v.

John James DALTON (Defendant), Appellant.

No. 30261.

St. Louis Court of Appeals. Missouri.

Jan. 19, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 17, 1960.

Frank B. Green, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellant.

George R. Gerhard, St. Louis, for respondent.

BRADY, Commissioner.

This appeal arises out of a suit for personal injuries and damages allegedly sustained as the result of an automobile collision which occurred at the intersection of Cherokee and Gravois Streets in the City of St. Louis, Missouri, at about 1:30 a. m., March 26, 1957. The jury returned a verdict for the plaintiff, hereinafter called the

respondent, in the amount of $2,500, and the defendant, hereinafter called the appellant, has duly perfected his appeal to this court.

Appellant assigns three actions of the trial court as prejudicial error. First, in overruling his "motions" for directed verdict. In this connection, appellant alleges that respondent failed to make a case upon primary negligence because the evidence was that appellant stopped his automobile before entering the intersection, thereby securing the right of way at the intersection by being the first to lawfully occupy its common area, and that his automobile had cleared the greater part of the intersection and most of the path of respondent's automobile, when respondent, proceeding into the intersection at the undiminished speed of 25 m. p. h., collided with the extreme right rear end of appellant's auto. Appellant further alleges that respondent failed to make a submissible case upon any theory of humanitarian negligence because the evidence shows that respondent, who admittedly was not oblivious, was not in a position of imminent peril soon enough for the duties under the humanitarian doctrine to commence to operate in time for effective action. The third sub-point in this first assignment of error is that respondent was guilty of contributory negligence as a matter of law because he did not apply his brakes at any time from the time he first saw appellant's automobile approximately one-fourth of the way across the intersection, at which time respondent was still 45–60 ft. back from the point of impact and traveling at a speed of 25 m. p. h. down to the time when the impact occurred.

The second assignment is that the court committed prejudicial error by giving and reading Instruction No. 2, because that instruction failed to hypothesize sufficient facts as to relative speeds and positions of the vehicles so as to advise the jury under what circumstances they could find that appellant entered the intersection "at a time when it was not safe to do so," and that there was no evidence that the appellant did not stop at the major stop sign. In connection with this assignment of error, the appellant also objects to the giving of Instruction No. 2 for the reasons stated earlier, that there was failure to make a submissible case upon any theory of primary negligence, and also because the respondent was guilty of contributory negligence as a matter of law.

The appellant urges as a third commission of prejudicial error the giving of Instruction No. 1, because that instruction is upon a theory of humanitarian negligence, and under his first assignment of error, appellant urges that there was no humanitarian negligence case made and, therefore, respondent was not entitled to instruct on humanitarian failure to stop or slacken speed.

The instructions complained of are as follows:

"Instruction No. 1

"The Court instructs the jury that if youfind (sic) and believe from the evidence that at the time and place mentioned in evidence, the plaintiff, Eugene Woods, was driving the Ford automobile mentioned in evidence in a southwestwardly direction on Gravois at its intersection with Cherokee Street, and if you further find that at said time and place the plaintiff and the automobile which he was driving were in imminent peril of coming into collision with the defendant's automobile being then and there driven by the defendant in a westwardly direction on Cherokee Street and if you further find and believe from the evidence that the defendant saw, or by the exercise of the highest degree of care, should have seen the plaintiff and the automobile he was driving in such position of imminent peril in time thereafter, with the means and appliances then and there at hand, and with reasonable safety to the defendant, his automobile, and all other persons and property in the vicinity, to have stopped said automobile or slackened the speed there-

of, and thus and thereby have avoided coming into collision with the automobile which plaintiff was driving, and if you further find and believe that the defendant failed to exercise the highest degree of care in either of the particulars aforesaid after he saw, or should have seen the plaintiff and the Ford automobile he was driving in such position of imminent peril, if any, and was thereby negligent, and that such negligence, if any, was the direct and proximate cause of the collision mentioned in evidence, and plaintiff's injuries, if any, then and in that event your verdict should be for the plaintiff, Eugene Woods, and against the defendant, John Dalton; and this is the law, even though you may also find that the plaintiff himself was negligent, and that such negligence, if any, directly contributed to his being in said position of imminent peril.

\*       \*       \*       \*       \*       \*

"Instruction No. 2

"The Court instructs the jury that it is the duty of the driver of a motor vehicle, under the law of the City of St. Louis, to stop at stop signs erected at lawfully designated stop intersection, and to yield the right of way to drivers and pedestrians, and not proceed through said intersections or into said major streets until safe to do so.

"In this connection, you are further instructed that if you find and believe from the evidence that at the time and place mentioned in evidence, the plaintiff was in the exercise of the highest degree of care for his own safety and was driving the Ford automobile mentioned in evidence in a southwestwardly direction on Gravois approaching its intersection with Cherokee Street, and if you further find and believe that at said time and place Gravois was a lawfully designated stop intersection and major street, and that a stop sign

was erected atsaid (sic) intersection controlling westbound vehicular traffic on Cherokee Street, and if you further find that the defendant at said time and place drove his automobile in a westwardly direction on Cherokee Street, and into and through its intersection' with Gravois at a time when he saw, or by the exercise of the highest degree of care, should have seen the Ford automobile plaintiff was driving in close and dangerous proximity to said intersection and defendant's intended path of travel, and if you further find that in driving into and through said intersection, the defendant failed to yield the right of way to the plaintiff and proceeded through said intersection at a time when it was not safe to do so, and if you further find said aforementioned vehicles came into collision in said intersection, causing the automobile plaintiff was driving to spin and strike the lamp post mentioned in evidence, causing plaintiff to sustain injuries, and if you further find that in failing to yield the right of way to plaintiff, and in proceeding into and through said intersection at a time when it was not safe to do so, if you so find, then (sic) defendant was negligent, and that such negligence, if any, was the direct and proximate cause of the collision mentioned in evidence, and plaintiff's injuries, if any, then and in that event your verdict should be in favor of the plaintiff, Eugene Woods, and against the defendant, John Dalton.

\*       \*       \*       \*       \*       \*"

In considering appellant's first assignment of error, when determining whether or not a submissible case was made on the theory of primary negligence or under the humanitarian rule, this court is required to view the evidence in the light most favorable to respondent, giving him the benefit of every inference reasonably deducible therefrom, and disregarding testimony and inferences adverse to him.

Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918; Walters v. Larson, Mo. App., 270 S.W.2d 112; DeLong v. Broadston, Mo.App., 272 S.W.2d 493; Hill v. Torrey, Mo.App., 320 S.W.2d 594; Standley v. Western Auto Supply Co., Mo.App., 319 S.W.2d 924. So far as appellant's contention that respondent was guilty of contributory negligence as a matter of law is concerned, the contributory negligence as a matter of law must appear in respondent's case, or be established by evidence on the part of the appellant which is binding on respondent, or which respondent concedes to be true. Beaver v. Wilhelm, Mo.App., 321 S.W.2d 1.

The undisputed evidence was that Gravois runs generally northeastwardly and southwestwardly, and Cherokee runs generally due east and west in the City of St. Louis and intersects Gravois at about a 45 degree angle. The angle of intersection causes Gravois Avenue to be estimated at 90 ft. wide by respondent, and 126 ft. wide, according to appellant's paced-off measurement. The weather condition shortly before the collision was drizzling rain. The surface of the intersection was black asphalt of the kind that glistens and gets a high shine on it when wet. Respondent was driving a Ford automobile, belonging to a passenger in the automobile with him, in a southwestwardly direction on Gravois, and appellant was alone in his Pontiac automobile as he drove westwardly on Cherokee.

Respondent's version of the collision is that he approached the intersection at a speed of 20–25 m. p. h., driving southwest on Gravois in the middle driving lane; that is, there was one lane to the left of him next to the center lane and two lanes to the right of him, one of which was the parking lane; his headlights and windshield wipers were operating and it was drizzling rain; that he first saw appellant's automobile when the front of it was about in the middle of the second driving lane east of the center lane of Gravois, headed west on Cherokee Street at an approximate speed of 30–35 m. p. h.; that respondent was at this time about 30–50 feet back from where Cherokee crosses Gravois; that on first seeing appellant's automobile, respondent swerved to the left as far as he could under the circumstances, and took his foot off of the accelerator; that appellant's automobile never slackened speed after respondent first saw it, and continued straight across the intersection on Cherokee Street; that the impact took place approximately at the line dividing the third driving lane from the second driving lane in the southwestbound portion of Gravois; that the right front fender of the car respondent was operating came in contact with the right rear bumper of the appellant's automobile; that respondent did not apply his brakes after he first saw appellant for fear of losing control of the car he was operating; and that he could not estimate his stopping distances under the circumstances prevailing at the time of the collision because he had never been confronted with an emergency on a wet street prior to that time.

Appellant's version is that he had stopped his automobile alongside the stop sign located on the northeast corner of the intersection, and then moved forward, looking to his left and then to his right, that when he was about one-fourth of the way across the intersection he first saw respondent, who was then 125–150 ft. back from Cherokee; that upon seeing respondent he estimated respondent's speed at 25 m.p.h. and decided it was safe to cross the intersection; that he was then traveling about 5 m. p. h. and accelerated to 10–12 m. p. h. and was traveling at that speed when the impact occurred; that he directed his attention ahead of him until the front end of his automobile reached the west curb of Gravois, when, just prior to the impact, he saw a glare of headlights to his right and the impact occurred immediately thereafter. On cross-examination, appellant stated that at 5 m. p. h. he could have stopped his automobile in 10-15 ft. and within 20 ft. at 10 m. p. h. under the conditions then prevailing; that upon deposition, read at the trial, appellant stated he could have stopped his car at 20 m. p. h. in

30–35 ft. and at 25 m. p. h. in 50 ft. A police officer testified that appellant had estimated his speed at 25 m. p. h. when so questioned at the scene.

It is unnecessary to set out the evidence regarding injuries, for there is no issue before this court regarding them.

■ It is difficult to understand what appellant means by his assignment of error that the trial court committed prejudicial error in overruling appellant's "motions for a directed verdict." The record discloses that appellant filed such a motion both at the close of respondent's case and again at the close of all the evidence. Both motions were overruled by the trial court, and after the court took that action on his motion for a directed verdict filed at the close of the respondent's case, appellant went on to present his evidence. By such action, appellant waived any alleged error in the trial court's ruling on that motion, and all we can consider is any alleged prejudicial error in overruling the motion for directed verdict offered at the close of all the evidence. Altenderfer v. Harkins, Mo.App., 243 S.W.2d 558.

■ Under this decision it is unnecessary to rule whether or not respondent made a submissible primary negligence case. However, since the case is remanded and presumably will be tried again, Instruction No. 2 is set out herein to point out that while it requires the jury to " * * * further find and believe that at said time and place Gravois was a lawfully designated stop intersection and major street * * *", there was no evidence to support any such finding. Only § 35 of the ordinance pleaded by respondent was read into evidence and it in no way identifies the intersection in evidence as one having been lawfully designated as a "stop intersection."

We will first discuss appellant's assignment of error based upon his contention that respondent failed to make a submissible case upon any theory of humanitarian negligence. Usually a humanitarian case

must fail when the plaintiff or his vehicle comes into an intersection last, and runs into the side of the other vehicle. Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, loc. cit. 302. The reason is that such actions show that the plaintiff was not in a position of imminent peril soon enough for the duties under the humanitarian doctrine to commence to operate in time for effective action. Mahl v. Terrell, 342 Mo. 15, 111 S.W.2d 160. Appellant's contention is that since respondent's automobile never got in front of appellant's automobile, the physical facts of the collision which show that the right rear end of appellant's automobile was hit illustrate that the appellant had all but escaped the path of respondent's automobile when the collision occurred. The zone of imminent peril for respondent in this case, appellant urges, was extremely narrow, and was limited to his physical ability to avoid striking the right rear end of appellant's automobile. Appellant's conclusion from the facts is that it was only during that brief fraction of time when respondent could no longer avoid striking the right rear end of appellant's automobile that respondent can be said to have been in a position of imminent peril, and that since the respondent's zone of peril is so narrowly limited by the facts of this case, he was not in a position of imminent peril as that term is used within the meaning of a humanitarian submission soon enough for the appellant, who by that time had almost completely passed in front of him, to have avoided the collision by stopping or slackening the speed of his automobile.

■ The essential elements of a cause of action under the humanitarian rule are that (1) respondent was in a position of peril, (2) appellant had notice thereof, or constructive notice thereof, if appellant had a duty to be on the lookout, (3) appellant, after receiving such notice, had the present ability with the means then at hand to have averted the impending collision without injury to himself or others, (4) appellant failed to exercise the highest degree of

care to avert the impending collision, and (5) by reason thereof, the respondent was injured. Welch v. McNeely, Mo., 269 S.W. 2d 871; Largo v. Bonadonna, Mo., 269 S.W.2d 879. It is (1) and (3) of the above stated elements of a submissible humanitarian case that appellant questions in this case. The first question, then, is whether or not respondent ever came into a position of imminent peril and, if so, when he entered into that condition. The second question is whether or not, after respondent entered that position, the appellant could have stopped or slackened the speed of his automobile so as to have avoided this collision without any injury or danger to himself.

Of course, until the respondent can be said to be in a position of imminent peril, the appellant was under no duty to act to stop or slacken his speed under the humanitarian rule, Wilson v. Toliver, Mo., 305 S.W.2d 423. The "imminent peril" necessary for a humanitarian submission must be that which is certain, immediate, and impending, and a likelihood of, or bare possibility of, injury is not sufficient to create "imminent peril." Wilson v. Toliver, supra; Paydon v. Globus, Mo., 262 S.W.2d 601. Each case must depend upon the particular circumstances therein involved, and normally it is for the jury to say, under the circumstances of each case, where the imminent peril of the collision arose and whether thereafter the appellant in the exercise of the highest degree of care, with the means then at hand and with safety to himself, could have stopped or slackened the speed of his automobile so as to avoid the collision. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, loc. cit. 583, 584. Without ruling upon the point, we will assume for the purposes of this opinion only that the evidentiary facts that appellant first saw respondent when respondent was 30–50 ft. back from the intersection, proceeding at 25 m. p. h. in a path that would cross appellant's intended path of travel upon slick, glistening blacktop pavement, during drizzling rain or light snow, at a

time when appellant was one-fourth of the way across the intersection (31½ ft. into the intersection if the jury accepted respondent's testimony that Gravois was 126 ft. wide, and 22½ ft. into the intersection taking appellant's testimony that Gravois was 90 ft. wide) and proceeding at 30–35 m. p. h. (respondent's testimony) or 25 m. p. h. (from the testimony of the investigating police officer) were sufficient to warrant the submission of whether or not respondent was then in imminent peril to the jury. While we do not rule the case upon the point, it should be mentioned, since the case will presumably be retried, that there was never any testimony as to the width of Cherokee Street. Almost every witness who testified was asked to estimate the width of Gravois, but all that appears as to the width of Cherokee Street is the statement of counsel for respondent, made in his opening statement, that Cherokee Street is 40 ft. wide. There was never any testimony on the point, nor was there any other estimate or way of fixing how far respondent traveled from the point he was first seen by appellant 35–50 ft. back from the intersection until the point of impact ever afforded the jury.

That still leaves the vital question of whether or not the appellant could have, with the means at hand and with safety to himself, stopped or slackened the speed of his automobile so as to have avoided the collision if respondent's condition of imminent peril became, or should have become, known to appellant. It is on this point respondent's humanitarian submission fails. Appellant admits that he saw respondent in the position heretofore described when appellant was one-fourth of the way out into the intersection, or one-fourth of the way across Gravois. In his brief and upon oral argument, the respondent based his contention upon this point on the evidence given by appellant as to his stopping distances at 5 m. p. h. and at 10 m. p. h. Respondent pointed out that appellant's own testimony was that he was going 5 m. p. h. when he first saw respond-

ent's car, and that at that time he could stop within a distance of 10–15 ft. Appellant further testified that he then speeded up to a speed of 10–12 m. p. h. and that at that speed he could stop within a distance of 20 ft. Using either the appellant's estimate of the width of Gravois as 90 ft. or respondent's estimate of the width of Gravois as 126 ft., respondent goes on to point out that in either case, appellant could have stopped his automobile, by his own testimony, at a point east of the center line of Gravois Avenue, and the testimony is undisputed that the collision took place west of the center line of that street.

The difficulty with this argument is that it is at war with respondent's case. Respondent cannot be allowed to argue that appellant was going 30–35 m. p. h., as respondent testified, or 25 m. p. h. as the police officer testified appellant told him at the scene, in order to secure for himself a position of imminent peril, and then turn around and use appellant's testimony that he was going 5 or 10–12 m. p. h., in order to allow respondent to show that the appellant could have stopped or slackened his speed soon enough to have avoided the collision after he first saw the respondent. It is obvious that since respondent's speed is uncontradicted at 25 m. p. h. and his position from the intersection is fixed at 30–50 ft., in order to make his case of imminent peril, respondent would have been well past the point where the impact occurred, under either party's testimony, before appellant arrived at that point, had appellant been proceeding at 5 or 10–12 m. p. h. This testimony, then, is at war with respondent's case, and while respondent is entitled to the most favorable evidence and the benefit of all favorable inferences arising therefrom, he cannot use evidence which is at war with his theory of the case. His own evidence as to the speed appellant was traveling is of no assistance to him, for there is no testimony as to the stopping distances of appellant's automobile traveling at 30–35 m. p. h. However, there was testimony that appellant told the investigating traffic officer that he was proceeding at 25 m. p. h. and there is testimony from appellant that at that speed he could stop in a distance of 50 ft. Taking the width of Gravois as 126 ft. wide, since this is the evidence most favorable to respondent, the center line would then be 63 ft. from each curb, and since appellant testified that he was one-fourth of the way out into Gravois when he first saw respondent, he was therefore 31½ ft. out into Gravois and he had 31½ ft. further to proceed before he came to the center line of Gravois. Again taking the evidence in its most favorable light to respondent, the impact occurred at the dividing line between the first and second traffic lanes west of the center line of Gravois. The southwest bound portion of Gravois had four traffic lanes in its 63 ft. which makes each 15¾ ft. wide. Appellant testified that his car was 17 ft. long, and it is undisputed that the impact occurred at the right rear of his car. Therefore, if we add the distance that appellant yet had to travel to reach the center lane of Gravois after he first saw respondent in a position of imminent peril, 31½ ft., to the width of the one traffic lane immediately west of the center line of Gravois, 15¾ ft., plus the 17 ft. length of the car, we can ascertain that appellant must have traveled 64¼ ft. from the time he first saw respondent in a position of imminent peril until the impact occurred. The testimony was that at 25 m. p. h. he could stop his car in 50 ft. and so could have stopped short of the point of impact. But this would not have avoided the collision. Had he stopped in 50 ft. he would have been 18½ ft. west of the center line of Gravois, or 2¾ ft. of his car would have been across the line dividing the first and second traffic lanes west of the center line of Gravois. The accident would have still occurred, only the right front of his car would have been hit instead of the right rear. Nor can respondent claim that if appellant had stopped in that distance, the accident would have been avoided by respondent passing in front of appellant.

The evidence was that respondent started to swerve to the left upon first seeing appellant's automobile. It follows that respondent failed to make a submissible case on the humanitarian theory of failure to stop, for the reason that the evidence, considered in its light most favorable to respondent, fails to show that appellant could have stopped his automobile in time to have avoided this collision after he became aware or should have become aware of respondent's position of imminent peril.

■ The humanitarian submission was contained in Instruction No. 1, and was in the disjunctive on failure to stop or slacken speed. The effect of a disjunctive submission is well settled in this state. By such a submission, the respondent assumed the burden of producing sufficient competent evidence to make a submissible case on each of the issues so submitted in the instruction. Whitehead v. Fogelman, Mo.App., 44 S.W.2d 261; Martin v. Springfield City Water Co., Mo.App., 128 S.W.2d 674; Raymond, Missouri Instructions, Vol. I, § 70. Having held that respondent failed to make a submissible case on the appellant's failure to stop, it is unnecessary to rule whether or not the other phase of respondent's disjunctive humanitarian submission was so substantiated by the evidence as to be submissible to the jury.

■ The respondent went to the jury upon both the humanitarian and primary theories of negligence, as he was entitled to, since the submissions were neither contradictory nor inconsistent, and he must sustain the burden of proving a submissible case upon both theories. Thompson v. Gipson, Mo., 277 S.W.2d 527, loc. cit. 530. The respondent did not make a submissible case under the humanitarian doctrine. It follows that the judgment should be reversed and the cause remanded for further proceedings.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

The judgment is therefore reversed and the cause remanded for further proceedings.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.