Louise A. STONEFIELD, Plaintiff-Respondent.

v.

William B. FLYNN, Jr., Defendant-Appellant.

No. 30645.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Motion for Rehearing or for Transfer to Supreme Court en Banc Denied and Opinion Modified July 11, 1961.

1. Now V.A.M.R. Civil Rule 74.05.

Richard M. Stout and Kent E. Karohl, St. Louis, John B. Gray, Clayton, for defendant-appellant.

Barnhart & Sommers, Don B. Sommers, David G. Dempsey, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Louise A. Stonefield filed this action to recover for personal injuries and damages in the sum of $35,000, alleged to have been sustained in a collision between the defendant's automobile and one operated by her. Defendant answered and counterclaimed for personal injuries and damages of $7,500. Plaintiff replied, and the issues being thus joined, were tried before the court and a jury. The result was a verdict and judgment in favor of plaintiff and against defendant for $14,535, and in favor

of plaintiff on defendant's counterclaim. Defendant's timely after-trial motions being overruled, he brought this appeal.

■ In the jurisdictional statement in his brief defendant expresses some doubt as to the amount in dispute on this appeal, and to the jurisdiction of this court. The question raised is whether the amount for which defendant had counterclaimed should be added to the amount of plaintiff's judgment to determine the amount in dispute. If so, the total would exceed our jurisdictional limitation. We find the applicable rule to be as stated in Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920, 923, that if the case is one where there can be no simultaneous recovery by the plaintiff on his claim and by the defendant on his counterclaim, then the amount in dispute for the purpose of determining appellate jurisdiction is the amount of the judgment. In this case plaintiff submitted her claim on instructions hypothesizing both primary and humanitarian negligence on the part of defendant; and defendant submitted his counterclaim on charges only of primary negligence. Except for the fact that two plaintiffs were involved, the identical situation prevailed in Jameson v. Fox, 364 Mo. 237, 260 S.W.2d 507, 508, 58 A.L. R.2d 80, where the court said: "* * * This is not a case where plaintiffs' claims and defendant's counterclaim can coexist in law. Proof of one necessarily disproves the other, so that there can be no such eventuality as both recovering, or, on this appeal, affirming the judgment on plaintiffs' claims and reversing it as to defendant's counterclaim. * * *" The underlying reason for the rule is that in such a situation the issues arising both on plaintiff's cause of action and on defendant's counterclaim are merged in and resolved by the verdict in favor of the prevailing party. Hoefel v. Hammel, Mo.App., 228 S.W.2d 402. Since the verdict in this case was in favor of plaintiff for $14,535, it follows that appellate jurisdiction is in this court.

The collision which gave rise to this action occurred at the intersection of Washington Avenue and Thirteenth Street, in the City of St. Louis, on January 22, 1958, shortly before 4:30 P.M. Washington Avenue, an east-west street, was 60 feet wide, while Thirteenth Street, running north and south, was 40 feet in width. There were three lanes for westbound traffic on Washington, and the same number for eastbound. It was a clear day, and the streets were dry. On Thirteenth Street, south of the intersection, there was a stop sign located at the southern edge of the crosswalk. There was no stop sign for traffic moving westwardly on Washington Avenue.

Plaintiff testified that she drove her automobile north on Thirteenth Street to the stop sign and stopped. She then proceeded forward until the front bumper of her car was even with the south curb of Washington Avenue, and again came to a full stop. In that position she looked to the west, and the only vehicular traffic she saw was a bus stopped at the loading zone at Fourteenth Street. She then looked to her right and saw no moving traffic, between Twelfth and Thirteenth Streets, but she did observe two westbound buses stopped in the loading zone, situated halfway between Twelfth and Thirteenth Streets. She started forward, and when the front of her car reached the center of Washington (at which time she had reached a speed of 10 miles per hour) she observed a pedestrian then in the act of stepping off the curb at the northwest corner of the intersection, intending to walk to the east, in front of her car. Plaintiff stated that she took her foot off of the accelerator, which gradually reduced the speed of her car to about one mile per hour, and permitted the pedestrian to cross in front of her; and that when the front of her car was in the westbound curb lane she saw a blur to her right, immediately prior to the collision. According to plaintiff, the right headlight of defendant's car made an imprint on the right side of plaintiff's car, at the windshield post, and the left headlight made a mark on the back door of her vehicle. She testified that her automobile was knocked sideways

about the length of the car, and that it came to rest on the northwest corner of the intersection. Plaintiff admitted that from the time she pulled away from the south curb of Washington she never again looked to her left or right, but only straight ahead.

Plaintiff produced an eyewitness to the occurrence, named Harry J. Slover, a taxicab driver, who testified that he was headed north on Thirteenth Street, and that he was immediately to the rear of plaintiff's car when she stopped at the south curb of Washington. He corroborated plaintiff's testimony that she looked to the west and east before proceeding into the intersection, and stated that plaintiff started up very slowly. As she did so, Slover pulled up, stopped, and then started to make a right turn to go east on Washington. About the time he was halfway around the corner he saw the defendant's car. According to Slover, westbound traffic on Washington was then stopped at Twelfth, and the defendant's automobile was the only westbound vehicle in the block between Thirteenth and Twelfth Streets. From that point on the witness vacillated in his testimony. Considerable discrepancies and inconsistencies were developed on cross-examination regarding the relative positions of the two automobiles at the time Slover first saw the defendant's car, their respective speeds, their movements up to the time of the collision, and the approximate place in the intersection where the impact occurred. These variances are perhaps understandable in the light of Slover's statements that "Just about the time that I got glance of him (the defendant) I heard this crash," and that " * * * I am poor judge of distance." Taking the evidence most favorable to the plaintiff, as we are required, and separating the wheat from the chaff, the substance of Slover's testimony is that when the front end of plaintiff's automobile was about four feet past the center line of Washington Avenue the front end of defendant's car was then 30 feet away; that the left side of defendant's vehicle was eight feet north of the center line; that

plaintiff's car was then traveling at a speed of five or six miles an hour and the defendant's automobile was going 35 to 40 miles an hour; that the front of defendant's car hit the right side of plaintiff's vehicle and pushed it towards the northwest corner of the intersection; and that the rear end of plaintiff's car was about two feet north of the center line of Washington when the impact occurred.

Defendant's testimony was that he turned on to Washington Avenue at Tenth Street, and proceeded west to Twelfth, where he stopped in obedience to a stop light showing red. When it changed to green he started up, in the middle westbound lane, as did another car to his left, which pulled slightly ahead of him. In that position they proceeded to the west, reaching a speed of 25 to 28 miles per hour. As defendant's car was about 15 or 16 feet from the intersection of Thirteenth Street, the brakes on the car to his left were applied, and screeched, and he applied his own brakes and swerved to his right. As he passed the front of the car to his left he saw plaintiff's automobile coming across, approximately 10 or 12 feet away. His car was on an angle, with the front just entering the curb lane, when the collision occurred. He stated that there was a medium amount of traffic on Washington at the time, and that the going-home rush was beginning. On cross-examination it was developed from the defendant that the distance from Thirteenth to Twelfth Street was " * * * about two hundred and some odd feet * * * " but less than three hundred feet—"Somewhere between two and three hundred feet."

Defendant introduced in evidence two ordinances of the City of St. Louis which were in effect at the time of the collision. One designated Washington Avenue, between certain cross-streets, which included Thirteenth Street, as a "major street." The other ordinance provided that stop signs should be erected and maintained at every street intersecting with a lawfully designated major street, and further provided:

"* * * 'Every driver shall stop at such sign and yield the right of way to drivers and pedestrians upon such major streets and shall not proceed through the intersection or into the major street until safe to do so.' * * *" The same ordinance defined a driver as one in actual physical control of a vehicle.

There was no evidence introduced by either party as to the lawful maximum rate of speed on Washington Avenue, and the only evidence of the length of the block between Thirteenth and Twelfth Streets was that given by defendant, heretofore mentioned.

Defendant contends that certain repeated inflammatory and unfair tactics and comments of plaintiff's counsel, made possible, in part, by inconsistent and erroneous rulings of the trial court, taken cumulatively, deprived defendant of a fair trial and require reversal of the judgment. Thus defendant seeks to invoke what was termed in Smith v. Wabash Railroad Company, Mo., 338 S.W.2d 16, 21, as the "incompletely articulated" doctrine of "total" or "cumulative effect" of errors. See Faught v. Washam, Mo., 329 S.W.2d 588; Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421; Myers v. Moffett, Mo., 312 S.W.2d 59; Dunn v. Terminal Railroad Association of St. Louis, Mo., 285 S.W.2d 701; Moore v. Shelly Motors, Mo.App., 225 S.W.2d 953; Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405. Measured by the standards established by those and other cases in which the doctrine has been applied, expressly or impliedly, there is substance to defendant's contention. However, the matters complained of are not likely to re-occur on a retrial of the case, and since other matters require the reversal of the judgment we prefer to rest this decision on such grounds.

■ Defendant vigorously contends that plaintiff was guilty of contributory negligence as a matter of law because of her admitted failure to look to her right at any time after she entered the intersection. Of course, the question of plaintiff's contributory negligence is always one for the jury "unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury." Kickham v. Carter, Mo., 314 S.W.2d 902, 908; Pender v. Foeste, Mo., 329 S.W.2d 656. We have carefully studied the cases cited by defendant, and while some of the facts in those cases are common to this case, there are distinguishing features in all of them. The most analogous case on the essential facts which our research has disclosed is that of Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918. There, as here, it was contended that the plaintiff was guilty of contributory negligence as a matter of law for failing to look to her right after she drove into the intersection. However, the court determined the relative positions of both vehicles just before plaintiff passed that point beyond which she could not have stopped short of the path of defendant's truck, and ruled that because of the intervening distance a jury question was presented.

■ That decision is controlling in the instant case. Adopting the reasoning and the method there employed of determining the relative positions of the two vehicles, it appears that plaintiff's vehicle in this case traveled at least 20 feet to the point of the collision after it entered the northern half of Washington Avenue. According to defendant, his vehicle was traveling in the middle westbound lane, so that it was at least 10 feet from the center line. Plaintiff was proceeding at a speed of 10 miles per hour in the vicinity of the center line. Allowing the usual reaction time and a reasonable stopping distance of nine feet, De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, plaintiff would have had to have seen defendant's car when she was about 18 or 20 feet south of its path. From that point her vehicle traveled a distance of at least 38 or 40 feet to the point of collision, and since its speed was decreasing, her average speed

was approximately six miles per hour. It took her slightly more than four seconds to traverse that distance. Therefore, in order to have stopped short of the path of defendant's car she would have had to have seen it when it was from about 205 to 235 feet away. There was evidence that the block between Twelfth and Thirteenth Streets was somewhere between 200 and 300 feet long, so that it is possible that defendant's car was not then within the block. But assuming that it was, and that plaintiff could have seen it at those distances, what was said of a much shorter distance in Schmittzehe v. City of Cape Girardeau, supra, 327 S.W.2d loc. cit. 923, is applicable and controlling here:

"* * * Under these circumstances whether or not her failure to look a second time when defendants say she should was the proximate cause of the collision would certainly be a jury question."

The point must be ruled against defendant. Schmittzehe v. City of Cape Girardeau, supra; Dye v. Geier, Mo., 345 S.W.2d 83.

Defendant also argues that the court erred in submitting the case to the jury under the humanitarian doctrine because there was insufficient evidence to support the disjunctively submitted elements of failure to stop, or to slacken and swerve. The only evidence of stopping distance at defendant's alleged speed of 40 miles per hour was that given by defendant on cross-examination. After first "guessing" that he could stop in 60 feet, upon being urged by plaintiff's counsel to give the jury "the benefit of your experience" based on his "best judgment," defendant eventually testified that "* * * going in a straight line, if you were having some kind of a test or something, and from the time your mind got it I'd say it would take you sixty feet to stop, approximately." On redirect examination counsel for defendant sought to minimize the effect of this testimony, but without success. Since one of plaintiff's claims of primary negligence was excessive speed of 35 or 40 miles per

hour, as a matter of consistency she was required in her humanitarian submission of failure to stop to rely upon the same speed. Defendant now contends that his testimony as to his ability to stop at a speed of 40 miles per hour (none was given for a speed of 35) was merely a "guess," and was not substantial evidence on which to base the submission.

"Testimony which is manifestly untrue, incredible, impossible, or contrary to scientific principles established by the laws of physics or mechanics does not amount to substantial evidence, has no probative value, and is to be disregarded." Kelly v. Terminal Railroad Ass'n of St. Louis, Mo., 315 S.W.2d 699, 702. For our purposes, therefore, it is not necessary to engage in an exercise in semantics. It is immaterial whether defendant's answer as to his ability to stop at 40 miles an hour was a "guess" which the defendant changed to an "estimate" because of the adroit questioning of persuasive counsel for plaintiff, or whether it represented his best judgment, based on his experience (and what that may have been is not shown by the evidence). In either event, if it is so manifestly incredible, impossible and contrary to the known laws of physics it does not amount to substantial evidence, and we are not required to blindly accept it. Kelly v. Terminal Railroad Ass'n of St. Louis, supra. Automobiles are so commonly and universally used that knowledge and information concerning their operation is widely known. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9. For that reason our courts have frequently taken judicial notice that an automobile traveling at a given speed may be stopped within certain limits, Reece v. Reed, Mo., 326 S.W.2d 67; De Lay v. Ward, Mo., supra; Spoeneman v. Uhri, supra, and have likewise taken judicial notice that a motor vehicle traveling at a certain speed cannot be stopped within a stated number of feet. Danner v. Weinreich, Mo., 323 S.W.2d 746.

The court knows that at 40 miles per hour a car moves about 59 feet a sec-

ond. Danner v. Weinreich, supra. In making her humanitarian submission plaintiff relied wholly upon, and now asks us to accept, defendant's testimony that traveling at that speed he could have stopped his car in approximately 60 feet. As to the matter of time, this would mean that his car could have been stopped in about one second. Irrespective of any allowance of time which a normal, or even a super-normal driver would require to realize that danger was imminent and to place his foot on the brake, it is a matter of common knowledge that the actual braking distance alone of an automobile moving at a speed of 40 miles per hour would exceed 60 feet by a substantial amount. However fast might be the defendant's reaction time, it obviously would have been impossible for defendant to have stopped his car within that distance, and his testimony to that effect is so contrary to common knowledge and experience that it must be rejected. Kelly v. Terminal Railroad Ass'n of St. Louis. There being no substantial evidence whereon to base the submission of the issue of defendant's ability to stop, it must be held that, for such want or omission, the plaintiff failed to make a case on that issue.

Defendant's remaining assignments of error relate in the main to plaintiff's instructions.

One particularly criticized is instruction No. 5, which in essence told the jury that if plaintiff stopped before entering Washington Avenue, and "if you find that at the time she started across Washington Avenue the automobile of the defendant was not then approaching so closely thereto as to constitute an immediate hazard and that plaintiff was at all times exercising the highest degree of care for her own safety, then the court instructs you that under the law the defendant was required to exercise the highest degree of care to yield the right-of-way at said intersection to the automobile operated by the plaintiff." Because of the phraseology employed it is obvious plaintiff regarded Washington

Avenue as a "through highway" as that term is employed in Paragraph 4 of Section 304.021 RSMo 1959, V.A.M.S., and that she believed that the duty to yield the right of way was governed by that statute rather than by the ordinance introduced in evidence by the defendant. However, defendant does not contend that the duty to yield should have been determined in the light of the ordinance rather than that of the statute. The basis of his complaint is that the instruction incorrectly declared the law as to the statutory duty to yield.

The instruction told the jury, in effect, that if defendant's car was not approaching so closely as to constitute an immediate hazard at the time plaintiff entered the intersection, it then became the duty of defendant to thereafter yield the right of way to the plaintiff as she proceeded across the intersection. This was an erroneous declaration of the law. A motorist crossing a through highway does not pre-empt the right of way by the simple expedient of entering the intersection first. Under Paragraph 4 of Section 304.021, his statutory duty to yield exists not only at the time he first enters the intersection; he is under the further duty while crossing the through highway to yield the right of way to a vehicle whose approach then constitutes an immediate hazard. The case of Herr v. Ruprecht, Mo., 331 S.W.2d 642, involved a collision between the car of plaintiff, traveling on a through highway, with that of defendant, which had almost completed its passage across the highway. The sole issue of negligence submitted by the plaintiff was a violation by defendant of Paragraph 4 of Section 304.021. Defendant's defense was that she had not only entered the intersection first, but that she had proceeded so far as to be entitled to the right of way, citing such cases as Minnis v. William J. Lemp Brewing Co., Mo.App., 226 S.W.2d 999; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; and Creech v. Blackwell, Mo., 298 S.W.2d 394. Regarding the duty of the defendant to yield the

right of way it was there said (331 S.W.2d loc. cit. 648):

"Defendant's statutory duty extended beyond stopping at the entrance to the intersection and giving preference to vehicles already in it. She was also required to yield the right of way to vehicles approaching the intersection so closely on the through highway as to constitute an immediate hazard. And defendant's duty to 'yield the right of way' existed not merely at the entrance and while she was stopped, but it continued with her into the intersection if and when it appeared (or reasonably should have appeared) to her that plaintiff's approach had then created an immediate hazard; this is true, at least to the extent that she might then be able to stop or slacken and let the other car pass. See Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 582; James v. Berry, Mo.App., 301 S.W.2d 530. In other words, the duty to 'yield' may not be wholly disregarded once a motorist gets the front end of his vehicle into an intersection with a through highway. * * *"

Plaintiff's instruction No. 5 thus incorrectly declared the law, and was therefore prejudicially erroneous.

Another instruction about which defendant complains is plaintiff's instruction No. 10. By that instruction the jury was informed that if the jury found that defendant was negligent, as submitted to it in instruction No. 5 (among others), and that such negligence of the defendant directly contributed in part to cause the collision and defendant's injuries, then the defendant was not entitled to recover on his counter-claim, and its verdict thereon should be in favor of the plaintiff. Inasmuch as plaintiff's instruction No. 5, thus referred to, was prejudicially erroneous, as we have held, it follows that instruction No. 10 relating to defendant's counter-claim was likewise prejudicially erroneous. Feldman v. Lewis, Mo.App., 338 S.W.2d 364; Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 236 S.W.2d 758.

The remainder of defendant's assignments of error relate to other instructions, which may be redrafted in the light of the attacks made upon them, and of comments made during closing arguments, not likely to re-occur, and it will not be necessary to extend this opinion by discussing them.

The judgment of the circuit court should be reversed and the cause remanded for a new trial on both plaintiff's cause of action and defendant's counter-claim. The Commissioner so recommends.

PER CURIAM

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.