Florence Ruth STEPP, Respondent,

v.

H. D. RAINWATER, Appellant.

No. 23909.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

Alder & Morrison, John J. Alder, Wiley W. Morrison, Kansas City, for appellant.

Joseph F. Meyer, James L. Muller, Kansas City, for respondent.

MAUGHMER, Commissioner.

Suit for personal injuries arising from an automobile accident. Three vehicles were involved. Each car was occupied only by its driver. There were no other eyewitnesses. The verdict and judgment were for plaintiff-respondent Florence Ruth Stepp and against the two codefendants in the sum of $18,250. While an appeal by both defendants was pending before the Supreme Court, plaintiff filed her satisfaction of one-half of the judgment and released the defendant Carl Herbert Holstad. By so doing the remaining and outstanding judgment against the defendant H. D. Rainwater was reduced to $9,125, and appellate jurisdiction vested in this court. Defendant's motion to transfer the appeal was sustained and the cause has been duly transferred. The only present contestants are the plaintiff Stepp and the appellant Rainwater.

The accident occurred about 5:00 p. m. July 6, 1961, on East-West Highway K-150 in Johnson County, Kansas. At the scene, K-150 is a two-lane black-top highway, 24 feet in width and with shoulders 8 feet wide. The highway was damp and wet from intermittent rain.

When the accident occurred the plaintiff was 28 years of age, married and employed in the office of the Collector of Internal Revenue in Kansas City. She was returning from work, was on the way to her home in Olathe, Kansas, driving her 1960 Valiant automobile and proceeding west on Highway K-150. From Roe Boulevard, which enters the highway from the north, the view to the west is unobstructed for approximately one mile. The accident took place about 1/10th mile west of Roe Boulevard. From the scene on west, there is a slight downgrade and the view is unobstructed for at least one half mile. Plaintiff testified that as she traveled west toward the scene she was moving 40 to 45 miles per hour, when she saw the Rainwater green 1950 Chevrolet parked on the north shoulder and headed west. She said that as she drew near she observed Rainwater "pull onto the highway and go to the left. It looked to me like he was attempting to make a U-turn. I applied my brakes and slowed the car down to give him plenty of room to clear my path". She said defendant cleared her lane and turned toward the east. She then for the first time saw what proved to be Holstad's 1953 Mercury automobile "skidding down the highway and it was coming backwards", "going about 70 to 75 miles an hour". "He was over the center line and into the west-bound lane and the back end of his car was coming at my car". She stated that when she first saw the Holstad car she applied her brakes and tried to turn to the right, but within a second or a little more, the car struck. Mrs. Stepp's face hit the windshield and she received facial cuts and lacerations. Appellant makes no complaint as to the amount of the judgment and has not included in the transcript the medical evidence of plaintiff—either her own testimony or that of her doctors. Therefore we shall make no further reference to her injuries.

When the cars came to rest plaintiff's Valiant was in the north lane, partly on the shoulder and headed west. Holstad's Mercury was just west of the Valiant and likewise pointed toward the west. There is complete disagreement as to the location of Rainwater's automobile just after the accident. Mr. Rainwater says he was west of the scene and headed west. Holstad and Mrs. Stepp declared that Rainwater had skidded on the roadway, turned from west to east and was headed east after the accident.

The testimony of the codefendant Holstad was that he was proceeding east at about 45 miles per hour, he first saw the Rainwater car when it was 11 or 12 car

lengths away, partially on the right shoulder, headed west and moving at a speed of about 10 miles per hour. He said Rainwater appeared to be trying to move onto the highway from the shoulder; that when the vehicles were about 6 car lengths apart, Rainwater headed southwest and across the center line; that in an effort to avoid hitting Rainwater, he turned left into the westbound lane, whereupon his car skidded and moved backwards and eastward at a speed of about 5 miles per hour and his rear was hit head-on by plaintiff's Valiant. He said he asked Rainwater after the accident why he had turned in front of him and Rainwater replied that he did not know; that it was not his (Holstad's) fault and said: "There was no way you could have avoided that". Holstad said Rainwater finally completed his turn, that his car was headed east, and immediately after the accident he saw the Chevrolet "headed east and parked on the south side of the road".

Richard A. Darnell and John Persell, Deputy Sheriffs of Johnson County, reached the scene at 5:13 p. m., a few minutes after the occurrence. Darnell observed the Valiant and Mercury standing in the westbound lane. Both were extensively damaged. Darnell said it was physically impossible to make a U-turn with a 1961 Chevrolet on a highway 24 feet wide without backing up. Officer Persell talked with plaintiff in the hospital. He said she told him " * * * all I could remember at that time was seeing this Mercury coming backwards at me". The deputies' written accident report referred to Rainwater's car as "Car No. 3". It was included in their report because Holstad had stated that it slid and was "crosswise in the road in front of him".

Frank Kohler, Police Sergeant, commanding the Johnson County Safety Education Unit, stated that the turning radius of a 1950 Chevrolet is 38½ feet and it could not be turned on a roadway 24 feet in width.

The defendant Rainwater gave his description of the accident. It was his testimony that he was driving west at about 35 miles per hour when a white Chevrolet "started around me" and cut in toward him, "I thought either he was trying to run me off the road or something and I pulled over and onto the shoulder and parked with my right wheels off the pavement". He saw the Mercury about 500 feet to the west and pulled back onto the highway but he said his right rear wheel caught on the edge of the highway and skidded. He said he got back onto the west lane and met and passed the Mercury which was partly in the west lane. He later heard a crash, looked back and then turned his car around and went back to the scene. Seven days after the accident Rainwater signed a statement which included the following: "My right wheels dropped off the edge of the pavement and I started skidding. The front of my car started heading to the eastbound lane. My right rear wheel was caught on the edge of the pavement".

Helen Potter of Olathe, a friend of Mrs. Stepp, came onto the scene shortly after the event. She said there were only three cars in the vicinity when she arrived and she fixed the location of each as follows: Mrs. Stepp's car "was setting on the north side of the road, just like she had stopped there", "she was going west". Mr. Holstad's vehicle was right in front of Stepp's "kind of in the middle, it was over the line" and pointed west. She said the third automobile, a 1950 green Chevrolet, was "on the south side of the highway, headed east, kind of off on the shoulder over there".

Appellant assigns as error the refusal of the trial court to sustain his motion for a directed verdict at the close of all the evidence. He says this was error because even though the testimony of plaintiff and Holstad that Rainwater made the U-turn would amount to submissible negligence, nevertheless, it was impossible for the green Chevrolet to make a U-turn on a 24 foot highway, hence the testimony that he did so is so unreasonable and contrary to the

physical facts and natural laws as to amount to insufficient evidence upon which a verdict might be predicated.

■ Appellant correctly states the legal principles under which we consider and determine the question. First, we consider the evidence in the light most favorable to the plaintiff and accept as true all that is not entirely unreasonable or contrary to physical facts or natural laws. Verdicts cannot be predicated upon guesswork, conjecture or speculation, and liability cannot rest upon evidence which is so contrary to the natural laws or the physical facts as to be beyond reasonable belief. Probst v. Seyer et al., Mo., 353 S.W.2d 798. However, applying these principles to the evidence here we have no difficulty or hesitancy in ruling the point against appellant. Conceding that an automobile cannot be turned completely around within a radius of 24 feet, it certainly could "swap ends" where the rear wheels slip and slide, especially on a greasy black-top highway. Appellant himself said that his right rear wheel caught on the highway causing the vehicle to skid. Besides, Rainwater started his movement when his car was partly on the shoulder. Both plaintiff and Holstad testified positively, that Rainwater came off the shoulder headed southwest, skidded and turned completely around. Both said that after the accident his car was headed east and partly on the south shoulder. Helen Potter, who came onto the scene soon after the casualty, observed the green Chevrolet in that location. We believe this evidence is not only substantial and sufficient on its face (as appellant concedes) but that it is neither so unreasonable nor so contrary to natural laws nor the physical facts as to require it to be overturned as a matter of law. The issue was properly submitted and the jury apparently accepted the version of the accident as described by plaintiff and Mr. Holstad. We shall not disturb the verdict on this point.

■ Secondly, complaint is made as to Instruction 2, which reads as follows:

"The Court instructs the jury that if you should find and believe from the evidence that at the time and place in question plaintiff was operating her automobile in a westerly direction on Highway K 150 and was at all times exercising ordinary care for her own safety and at all times was traveling on the regular west-bound portion of the highway and as she was so operating said automobile, a 1953 Mercury being operated in the opposite direction by the defendant Holstad swerved to his left from the east-bound lane of K 150 into plaintiff's west-bound lane of K 150 and there was a collision between the plaintiff's automobile and Holstad's Mercury. And if you further find that defendant Rainwater just immediately prior to said collision had been operating his automobile in a westerly direction on K 150 and he had negligently turned his automobile to the left of the center of the paved portion of the highway, if you so find, or so operated his automobile so as to cause it to cross from the west-bound portion of the highway and into the east-bound portion of the highway into the path of the east-bound Holstad automobile, and in so causing said automobile to go to the left into the east-bound portion of the highway and into the path of the defendant Holstad's automobile he was thereby negligent, if you so believe and find from the evidence, and such negligence, if any, caused or contributed to cause the defendant Holstad's automobile to come into collision with plaintiff's automobile and plaintiff was injured and damaged thereby, then your verdict shall be for the plaintiff and against the defendant Rainwater".

Appellant says the instruction is erroneous because it submits a theory of negligence which is not supported by the plaintiff's pleadings or evidence, fails to hypothesize sufficient facts and is phrased in the disjunctive, without evidence to support the dual submission.

The dual submission referred to is that Rainwater "negligently turned his automobile to the left of the center of the paved portion of the highway" *or* "so operated his automobile so as to cause it to cross from the west-bound portion of the highway and into the east-bound portion of the highway". We see no material difference in this so-called dual submission

■ By her petition plaintiff alleged that defendant Rainwater "made a U-turn across K 150". Appellant says the submission for crossing over the center line is not supported by plaintiff's pleading or evidence and fails to sufficiently hypothesize the facts.

In Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 978, our Supreme Court said: "The Yates case (Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541) and cases following the Yates case are not to be read or construed as requiring the submission of facts which are not necessary or essential to a finding upon the issue or issues of negligence specifically submitted".

In Hooper et al. v. Conrad et al., 364 Mo. 176, 260 S.W.2d 496, 500, 501, the same court spoke further, saying:

"The purpose of verdict-directing instructions is to make clear to the jury the essential fact issues they are to decide.

* * * *

"Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict. * * * Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged

may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction".

The ultimate issue as submitted was whether or not at the time and place the defendant Rainwater crossed over the center line. That was the essential fact the jury was to decide. The instruction clearly presented the issue to the jury.

■ Appellant says plaintiff's theory was that Rainwater made a U-turn, but the instruction permits recovery if he negligently crossed over into the eastbound lane and thereby caused or contributed to cause the accident. This is true. However, we believe the negligence as submitted is within the purview of plaintiff's pleadings. It is certainly within the limits of her evidence—the testimony of herself and of Mr. Holstad. The factual dispute during the trial concerning defendant's negligence was whether or not he crossed the center line. Defendant said he did not. Plaintiff and Mr. Holstad said he did. We believe that an affirmative finding under Instruction 2 constituted a finding of negligence under the law, under the pleadings, under the evidence and is sufficient upon which to predicate a verdict. Appellant's statement that the courts do not permit a verdict outside the scope of the pleadings and the evidence is generally a correct statement. But this is not such a case, and the cases cited by appellant are not applicable here. We hold, too, that the instruction sufficiently hypothesizes the facts and is not confusing, indefinite, incomplete or misleading.

The third and final assignment concerns Instruction 3 on the concurrent negligence of the two defendants. It is not contended that the composition of the instruction is improper, but rather it should not have been

given because Instruction 2, upon which it is based, should not have been given. In other words, appellant says Instruction 3 compounds the error in the giving of Instruction 2. Our holding that it was not error to give Instruction 2 disposes of this point which is overruled.

Finding no error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.