Edgar Russell EWEN, Plaintiff-Respondent,

v.

Edward Gibson SPENCE, Defendant-Appellant.

No. 8470.

Springfield Court of Appeals.

Missouri.

May 19, 1966.

Rehearing Denied June 11, 1966.

Application to Transfer Denied Sept. 12, 1966.

**522**

Graves & Graves, Neosho, for defendant-appellant.

Douglas & Douglas, Herbert Douglas, Neosho, for plaintiff-respondent.

RUARK, Judge.

Defendant Spence has appealed from a jury-based judgment in amount of $4,262.00 for property damage, medical expense, and loss of wages. The occasion: Defendant's Ford station wagon collided with plaintiff's tractor at the approach entrance (commonly known as Lyon Gate) to the former Fort Crowder reservation from Highway 71 south of Neosho. At this place Highway 71 is a divided, concrete pavement running north and south. The immediate and surrounding area is approximately level and open.

The east northbound lane of 71 is twenty-seven feet in width. There is a paved cross-over from the west southbound lane, with a "yield right-of-way" sign warning drivers approaching the northbound lane on the cross-over from the west. Immediately east of the northbound lane is a wide, level, spread-paved entrance area. The exhibits indicate at least four separate lanes, at least two of which are divided and curve outward from the center pavement. The actual road (farther on east) into the reservation is a dual lane. While the roadway and entrance road area are level at this place, south of Lyon Gate on 71 there is a small but fairly abrupt rise, or what the plaintiff terms a hill. According to plaintiff's testimony, the "top" or crest of this hill or rise is approximately one-half mile south. There are no obstructions to vision between this crest of hill and the cross-over.

On this forenoon defendant Spence was driving northbound from the south on the east lane of 71 in a Ford station wagon. His young daughter was asleep in the front seat beside him.

Plaintiff Ewen had been going south on the west lane of 71 and had turned east and was, or had been, crossing the east or northbound lane of 71. He was driving what appears to have been a comparatively small tractor and pulling behind it a combine which he said was attached flush to the rear of the tractor. He gave the length of the combine as fourteen feet. We do not find the length of the tractor stated, but he said the over-all length of the tractor-combine assembly was approximately twenty feet. The only other plaintiff's witness stated the length of the combine to be approximately twelve feet. We must conclude the tractor was six to eight feet in length. Defendant's northbound station wagon collided with the right rear wheel of the tractor at a point on the entrance approach into Lyon Gate where the rear of the tractor was eight feet east of the east edge of the northbound lane of 71.

The plaintiff submitted on negligence under the humanitarian rule. Appellant's sole contention is that the physical facts show that the collision could not have happened as plaintiff said it did. Plaintiff's case is this: He approached the cross-over from the north with the intention of entering or passing through the former Crowder reservation and on beyond, where he intended to combine some wheat on his father's farm. He swung his assembly to the left to head east on the cross-over. As he made this turn, he says he looked to the south and saw a car, presumably the defendant's, at the crest or top of the hill which was approximately one-half mile away. After he made his turn to the east, he traveled east a distance (he testified) of one hundred feet until he reached the northbound lane. He says he was driving his tractor at a speed of ten miles per hour. At that point (the northbound lane) he

looked to the south again, and the approaching car was then about halfway down the hill and one-fourth mile south of the crossover. Not stopping, he continued on east with his tractor-combine assembly across, or almost across, the northbound lane of 71, when his attention was attracted by the scream of tires, "and I looked up" and saw the approaching Ford. When the Ford struck the rear wheel of the tractor, it was in the entrance approach to the reservation, and the rear was eight feet east of the pavement on 71. Approximately seven feet of his combine still remained extended on the highway. Plaintiff offered in evidence as a part of his case the defendant's answer to an interrogatory, which plaintiff had addressed to him, in which defendant had stated that prior to the collision and at a point five hundred feet south of the place of impact, he had been driving at a speed of sixty-five to seventy miles per hour.

Defendant also testified that he was driving sixty-five to seventy miles per hour, and that is the only speed of defendant's car in evidence. Defendant also stated that when he was from fifty to seventy-five yards south of the entrance approach, he saw the tractor pulling the combine drive out ahead of him and enter upon the northbound lane. He first grabbed his sleeping daughter; then he applied his brakes and held to the right, hoping the tractor would stop. Plaintiff's witness, a highway patrolman who arrived before things had been moved, measured skidmarks to the south and leading to the place of impact, following the course defendant had followed. Marks left by right wheels extended a total of forty-one feet on the pavement and sixty-five feet on the grass, or a total of one hundred and six feet. The left tire marks extended forty feet on the pavement and thirty feet on the grass, or a total of seventy feet.

As nearly as we are able to calculate, the distance plaintiff traveled from the time he looked to the right (when his tractor was at the west edge of the northbound lane and entering upon it) until he reached the point of impact (where the rear of his tractor was not to exceed eight feet east of the edge of the pavement), was approximately forty-three feet. This distance represents the width of the northbound lane (twenty-seven feet), plus the distance from its east edge to the rear of the tractor (eight feet), plus the length of the tractor (not to exceed eight feet). We add this eight feet because the measurement commences from the front of the tractor at the west edge of the northbound lane and ends at the rear of the tractor, the place of impact. At the given speed of his tractor, ten miles per hour, he was traveling approximately 14.7 feet per second and would have covered the distance of forty-three feet in approximately three seconds. In order for the defendant to travel from halfway down the hill, one-quarter mile away, to the point of impact in three seconds, his Ford would have to have been proceeding at the rate of about, less than, *three hundred miles* per hour, and this does not take into account the effect of braking for at least one hundred and six feet.

Calculated another way: If we assume defendant was going seventy miles per hour (as being more favorable to plaintiff than the only other given speed because he would have reached the point of impact sooner), the Ford would have been traveling at a speed of approximately one hundred three feet per second, and the distance traveled (one-fourth mile) would have required him about 12.8 seconds to reach the place of impact (and this does not make any allowance for reaction time or braking distance); and, in that time the tractor, proceeding at approximately 14.7 feet per second would have traveled one hundred eighty-feet plus, or far east and beyond the point where the collision occurred.

■ Defendant had no duty under the humanitarian doctrine until it became reasonably apparent that plaintiff, in disregard of the "yield" sign, was entering upon and crossing the northbound lane into the path

of defendant's car, and that he was oblivious to or unable to extricate himself from his position of peril.

■ We are well aware that the verdict holder is entitled to the most favorable interpretation of all the evidence and inferences not in conflict with the theory of his case. This has been said so many times that it does not require citation of authority. And we realize that plaintiff is not to be too strictly bound or judged by exact figures as to time, speed, or distance, when such is a matter of estimate. 88 C.J.S. Trial § 208(5), p. 442; Caffey v. St. Louis-San Francisco Railroad Co., Mo.App., 292 S.W.2d 611, 615; Wood v. Ezell, Mo.App., 342 S.W.2d 503(5). The courts are reluctant to draw arbitrary conclusions so as to exclude sworn testimony.[1] But we are not required to blindly accept that which is incredible and contrary to common human knowledge (Stonefield v. Flynn, Mo. App., 347 S.W.2d 472, 477; East v. McMenamy, Mo., 266 S.W.2d 728, 731; Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 604). The evidence must show more than a mere possibility that the injury could have been avoided. Berry v. McDaniel, Mo. App., 269 S.W.2d 666, 670; Woods v. Dalton, Mo.App., 331 S.W.2d 132(7); Paydon v. Globus, Mo., 262 S.W.2d 601, 604. Obviously plaintiff must prove every element of a humanitarian doctrine case by probative evidence. Davis v. McClanahan, Mo. App., 262 S.W.2d 65, 69; Harrellson v. Barks, Mo.App., 326 S.W.2d 351, and cases

cited at p. 359, n. 12. And if two different, inconsistent, or opposing inferences in respect to liability can be drawn from the same evidence, the case must fail (Moore v. Ervin, Mo., 374 S.W.2d 142, 149; Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, and cases cited at 497, 498; Evans v. Colombo, Mo.App., 311 S. W.2d 141 [6]), for a verdict based on conjecture and speculation cannot stand. White v. Burkeybile, Mo., 386 S.W.2d 418 (8); Stepp v. Rainwater, Mo.App., 373 S. W.2d 162(12); Probst v. Seyer, Mo., 353 S.W.2d 798, 802, 91 A.L.R.2d 1252. There comes a point or place when statements given by a witness, whether in the form of estimates or otherwise, are so far removed from actual possibilities that they lose the force of bona fide estimates and honest opinions and become so manifestly incredible, irreconcilable with, and contrary to physical laws and common human knowledge that they demonstrate in and of themselves that they are made without actual knowledge and are mere conjecture, or wishful thinking. They do not constitute probative evidence.[2]

■ We grant that a person is entitled to considerable leeway in unaided estimates of distance (although the locations were given in reference to semi-fixed points [3] [at the top of the hill, one-half mile, and halfway down the hill, one-quarter mile]), but if we halve the defendant's given speed, or if we shorten the distance of one-quarter mile to one-half of that given by

1. Closser v. Becker, Mo., 308 S.W.2d 728, 736; Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131(3); Garrison v. Ryno, Mo., 328 S.W.2d 557(1); Phillips v. Stockman, Mo.App., 351 S.W. 2d 464(2).

2. 20 Am.Jur., Evidence, § 1183, p. 1033, § 1184, p. 1035; Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 604; East v. McMenamy, Mo., 266 S.W.2d 728(2); Kelly v. Terminal Railroad Association of St. Louis, Mo., 315 S.W.2d 699 (and cases cited at 702); Paige v. Missouri Pacific Railroad Co., Mo., 323 S.W.2d 753(8). Some of the cases which deal specifically with

distance and speed are: Stonefield v. Flynn, Mo.App., 347 S.W.2d 472; Wood v. Ezell, Mo.App., 342 S.W.2d 503; Woods v. Dalton, Mo.App., 331 S.W.2d 132; Harrellson v. Barks, supra, Mo.App., 326 S.W.2d 351; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885; Davis v. McClanahan, Mo.App., 262 S.W.2d 65; Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494.

3. See Sammons v. Kansas City Public Service Co., Mo.App., 179 S.W.2d 620, 153 A.L.R. 215; see also Davis v. St. Louis Public Service Co., supra, Mo., 316 S.W.2d 494.

plaintiff, and possibly slow down the speed of plaintiff's tractor, it is still impossible to make the speeds, distances, and times coincide so that the collision could possibly have happened in the way and manner plaintiff said it did. The statements indicate a lack of knowledge in respect to the facts testified to, and they are not probative evidence sufficient to sustain the verdict.

Under the circumstances here presented, we believe that the ends of justice will be served by setting aside the judgment and remanding the case for further proceedings not inconsistent herewith. Accordingly, the case is reversed and remanded.

STONE, P. J., and HOGAN, J., concur.